EXHIBIT 1

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
6/25/2025 5:05 PM
Clerk of the Court by Deputy,
Karen Broughton

1   CROSNER LEGAL, P.C.
    Craig W. Straub (SBN 249032)
2   craig@crosnerlegal.com
    Kurt D. Kessler (SBN 327334)
3   kurt@crosnerlegal.com
    9440 Santa Monica Blvd. Suite 301
4   Beverly Hills, CA 90210
    Tel: (866) 276-7637
5   Fax: (310) 510-6429
6
7   Attorneys for Plaintiffs

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
                    **SANTA CRUZ COUNTY**
9

10  CARLIE LYSKOSKI, KENDALL HILL,        Case No.   25CV01765
    MICHELE TUCKER, and TAYLOR
11  AMBROISNO, individually and on behalf  CLASS ACTION COMPLAINT FOR:
    of all others similarly situated,
12                                          1.  Violations of the Consumers Legal
            Plaintiffs,                         Remedies Act, Cal. Civ. Code §§ 1750,
13                                              *et seq.*;
        v.
14                                          2.  Violations of the Unfair Competition
                                                Law, Cal. Bus. & Prof. Code §§17200,
15  CONTINENTAL MILLS, INC.,                    *et seq.*;
16          Defendant.                      3.  Breach of Express Warranty;
17
18                                          4.  New York General Business Law § 349;
                                                and
19
                                            5.  New York General Business Law § 350.
20
21                                          JURY TRIAL DEMANDED
22
23
24
25
26
27
28

                        CLASS ACTION COMPLAINT

Plaintiffs Carlie Lyskoski, Kendall Hill, Michele Tucker, and Taylor Ambroisno (collectively, "Plaintiffs") on behalf of themselves all others similarly situated, and the general public, by and through undersigned counsel, hereby bring this action against Continental Mills, Inc. ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

<div align="center">

**INTRODUCTION**

</div>

1.     This is a consumer class action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"),  for breach of express warranty, and for violations of New York General Business Laws §§ 349 and 350.

2.      Defendant manufactures, distributes, advertises, markets, and sells Krusteaz® Cinamon Swirl Crumb Cake & Muffin Mix in a gluten free and regular version (the "Products"). The packaging prominently displays on the front of the label the claim that these Products contain "**NO ARTIFICIAL Flavors · Colors · Preservatives**" (the "Representation"):



<div align="center">

1

CLASS ACTION COMPLAINT

</div>

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    3.    The "**NO ARTIFICIAL . . . PRESERVATIVES**" statement is false. The

16  Products are made with manufactured Silicon Dioxide—an artificial preservative ingredient

17  used in food and beverage products.

18    4.    The ingredients are listed on the back of the Product (regular version) in tiny

19  print and list the following ingredients: CAKE MIX: Enriched bleached flour (wheat flour,

20  niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid), sugar, food starch-modified,

21  soybean oil, leavening (baking soda, monocalcium phosphate, sodium aluminum sulfate),

22  dextrose, salt, tapioca starch, arabic gum, xanthan gum, natural flavor. CINNAMON TOPPING:

23  Sugar, palm and soybean oil, brown sugar, cinnamon, molasses powder, salt, silicon dioxide

24  (anticaking agent), natural flavor.

25    5.    The ingredients are listed on the back of the Product (gluten free version) in tiny

26  print and list the following ingredients: CAKE MIX: Sugar, whole grain sorghum flour, whole

27  grain millet flour, food starch-modified soybean oil, arabic gum, guar gum, leavening (baking

28  soda, sodium aluminum phosphate, monocalcium phosphate), natural flavor, salt, tapioca starch,

2

xanthan gum. TOPPING: Sugar, Palm and Soybean Oil, Brown Sugar, Cinnamon, Salt, Silicon Dioxide (anticaking agent), natural flavor.

6.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the belief that they are buying a premium product that abides by the Representation.

7.      Plaintiffs were deceived by Defendant's unlawful conduct when purchasing the Products and bring this action on their own behalf and on behalf of consumers to remedy Defendant's unlawful acts.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. It sells the Products in California to tens of thousands (and likely many more) to California consumers.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this judicial district. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiffs.

11.     The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs Lyskoski, Hill, and Tucker claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiffs Lyskoski, Hill, and Tucker and members of the Class in California. By distributing and selling the Products in California, Defendant has

intentionally and expressly aimed conduct at California which caused harm to Plaintiffs and the Class that Defendant knows is likely to be suffered by Californians.

12.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this county. Plaintiff Lyskoski purchased the Products within this county.

### PARTIES

13.    Defendant is a Washington corporation that maintains its principal place of business in Washington. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products. Defendant sells its Products in large retail stores nationwide and in California including Walmart, Ralphs, Target, Vons, and online via amazon.com and Instacart. No matter where the Products are sold, they contain the same alleged deceptive Representation.

14.    Plaintiff Lyskoski is a resident of San Jose County, California.

15.    Plaintiff Hill is a resident of Sacramento County, California

16.    Plaintiff Tucker is a resident of Riverside County, California.

17.    Plaintiff Ambroisno is a resident of Nassau County, New York.

18.    Plaintiffs Lyskoski, Hill, and Tucker purchased the Products at retail stores in California during the class period. Plaintiff Ambroisno purchased the Product at a retail store in New York during the class period. Plaintiffs relied on Defendant's deceptive advertising and labeling claims when purchasing the Products as set forth herein.

19.    Plaintiffs want to stop Defendant's false advertising as described below and are concerned that Defendant has continued to sell the Products with the Representation even after being notified of the false advertising allegations below.

### ADDITIONAL FACTUAL ALLEGATIONS

20.    The front label of the Product prominently states that there are "**NO ARTIFICIAL . . . PRESERVATIVES**" the thereby misleading reasonable consumers into believing that the Products do not contain any artificial preservative ingredients. However, the Products contain an artificial preservative called Silicone Dioxide.

4

21.     Studies show a growing number, if not a majority of, consumers choose foods made with clean ingredients.[1] In 2024, the global clean label ingredients market size was $44 billion.[2] As such, tapping into the clean label market is important to a company's growth and bottom line.[3]

22.     Indeed, it is well documented that manufacturers charge and consumers are willing to a pay a premium for products with clean ingredients (e.g., those that lack artificial ingredients).[4]

23.     Consumer research has found that 82% of U.S. respondents believe that foods with artificial ingredients are less healthy than their all-natural counterparts.[5]

---

[1] *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients*, FOOD INSIGHT (June 17, 2021), *available at* https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/; Alverson, Chloe, *Consumer trends continue to prioritize clean label, non-GMO beverage*s, BEVERAGE INDUSTRY, *available at* https://www.bevindustry.com/articles/96687-consumer-trends-continue-to-prioritize-clean-label-non-gmo-beverages.

[2] *Clean Label Ingredient - Market Share Analysis, Industry Trends & Statistics, Growth Forecasts (2024 - 2029)* (synopsis), MORDOR INTELLIGENCE, *available at* https://www.researchandmarkets.com/reports/4771850/clean-label-ingredient-market-share-analysis?w=5; *Clean Label Ingredients Market is Projected to Reach US$ 125.5 Billion and a Dynamic CAGR of 4.2% by 2030*, PERSISTENCE MARKET RESEARCH (Jan. 18, 2024), *available at* https://www.globenewswire.com/en/news-release/2024/01/18/2811262/0/en/Clean-Label-Ingredients-.

[3] *Uncovering the clean label connection to business grow* (May 16, 2022), *available at* https://www.ingredion.com/na/en-us/be-whats-next/growth-with-clean-label.html; *Uncovering the clean label connection to business growth*, INGREDION (May 16, 2022), *available at* https://www.ingredion.com/na/en-us/be-whats-next/growth-with-clean-label.html.

[4] *The Truth About Clean Label — and Why It Matters*, PERDUE FOOD SERVICE (Oct. 18, 2021), *available at* https://www.perduefoodservice.com/resources/trends-insights/the-truth-about-clean-label-and-why-it-matters/; Jacobsen, Jessica, *Consumer awareness of clean label drives demand for ingredient solutions*, BEVERAGE INDUSTRY, *available at* https://www.bevindustry.com/articles/95110-consumer-awareness-of-clean-label-drives-demand-for-ingredient-solutions.

[5] Kavanaugh J., The Future of Artificial Flavors & Ingredients. Forevest, Industry News, Flavor & Fragrance Industry (June 12, 2017) available at https://foreverest.net/news-list/the-future-of-artificial-flavors-ingredients (citing International, S. S. (2015, October 1). National study by Instantly reveals many Americans do not trust large companies – instantly. Retrieved January 26, 2017, from Press Releases

24.     Defendant takes advantage of consumers by labeling the Products as containing "No Artificial Preservatives" even though the Products contain an artificial preservative. It does this to increase sales.

### THE SILICON DIOXIDE IN THE PRODUCT IS ARTIFICIAL

25.     The Silicon Dioxide in the Products is "artificial." Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[6] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[7] Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[8]

26.     Consumer perception of the word "artificial" is in-line with the dictionary definitions. That is, a consumer expects a "No Artificial Preservative" claim to mean that any preservative ingredient in the food is in its natural state and has not been modified in some way.[9]

27.     Here, the Silicone Dioxide in the Products is artificial because it is made using synthetic processing.

---

[6] *Artificial,* DICTIONARY.COM, *available at* https://www.dictionary.com/browse/artificial

[7] *Artificial*, MERRIAM-WEBSTER'S DICTIONARY, available at https://www.merriam-webster.com/dictionary/artificial

[8] *Artificial*, CAMBRIDGE DICTIONARY, available at https://dictionary.cambridge.org/us/dictionary/english/artificial

[9] *Artificial Foods*. ENCYCLOPEDIA.COM. available at https://www.encyclopedia.com/food/encyclopedias-almanacs-transcripts-and-maps/artificial-foods

6

28.    Silicon Dioxide ($SiO_2$) in food products, including the Products, is synthetically manufactured (e.g., it is "artificial").[10] "Food-grade silicon dioxide" is known as a "synthetic" compound.[11]

29.    Food grade Silicon Dioxide is amorphous (non-crystalline), which is considered safer than crystalline forms (like quartz). Crystalline forms of Silicon Dioxide are not utilized in the food industry because workers at the manufacturing plant are exposed to serious health hazards from breathing the small crystalline particles.[12] Food-grade Silicon Dioxide, like the Silicon Dioxide in the Products, is considered artificial and synthetic.

30.    Safety Data Sheets note that food-grade Silicon Dioxide is "chemically prepared."[13] Food-grade Silicon Dioxide manufacturers state "Silicon Dioxide (SiO2) is a white, high purity, tasteless, odorless, easy dispersion, **chemical powder** produced by the precipitation of sodium silicate with sulfuric acid through hydrolysis."[14]

31.    Silicon Dioxide for foods is "meticulously **manufactured** through a controlled precipitation process."[15]

---

[10] *See* Lamas B, Martins Breyner N, Malaisé Y, Wulczynski M, Galipeau HJ, Gaultier E, Cartier C, Verdu EF, Houdeau E. *Evaluating the Effects of Chronic Oral Exposure to the Food Additive Silicon Dioxide on Oral Tolerance Induction and Food Sensitivities in Mice*. Environ Health Perspect. 2024 Feb;132(2):27007. doi: 10.1289/EHP12758. Epub 2024 Feb 21. PMID: 38380914

[11] *Id.*

[12] U.S. Department of Labor, Occupational Safety and Health Administration, *Silica, Crystalline* available at https://www.osha.gov/silica-crystalline/health-effects#:~:text=Breathing%20in%20very%20small%20(%22respirable,COPD)%2C%20and%20kidney%20disease.

[13] https://www.univarsolutions.com/zeofree-5162-silicon-dioxide-16166394

[14] https://e-milagro.com/products/silica/

[15] RawPharma, *Precipitated Silicon Dioxide Food Grade 1Kg Pack* available at https://rawpharmabiz.com/precipitated-silicon-dioxide-food-1kg-pack?srsltid=AfmBOooNn6PUYsJaeh-L8q6qbPsAhwXuL0TQ0xn2GBfadZLUB3U1yRa8

32.    "Food-grade $SiO_2$ is produced either thermally (e.g., fumed $SiO_2$) or through wet chemistry (e.g., $SiO_2$gel and precipitated $SiO_2$ (OECD, 2004)."[16] "The worldwide production of $SiO_2$ in 2000 was 432,900 tons, with ~ 90% reported to be SAS for food industry and other sectors (OECD, 2004)."[17] "The production, use, and end-of-life disposal of food-grade $SiO_2$ can lead to direct and indirect exposure of humans and the environment (Hansen et al., 1999, van Kesteren et al., 2014), and there are emerging concerns about its potential risk to humans and ecosystems (Maynard, 2014)."[18] This health concern is why the FDA does not allow Silicon Dioxide to be in any food above two precent by weight. 21 C.F.R. § 172.480(b)(4).

33.    The FDA states that "[t]he food additive silicon dioxide . . . is manufactured by vapor phase hydrolysis or by other means whereby the particle size is such as to accomplish the intended effect." 21 C.F.R. § 172.480(a).

34.    Food grade Silicon Dioxide is synthetically created. "Silicon dioxide is synthetically obtained from a vapor-phase hydrolysis reaction producing fumed silica. Another process to obtain synthetic amorphous silica is through a wet process to form hydrous silica."[19]

35.    Since 90% of the world's food grade Silicon Dioxide is "Synthetic Amorphous Silica" commonly referred to as "SAS,"[20] it is highly likely that the Silicon Dioxide in the Products is SAS. [21] Here, it is even more likely that the Products use SAS because SAS is used

---

[16] Yu Yang, James J. Faust, Jared Schoepf, Kiril Hristovski, David G. Capco, Pierre Herckes, Paul Westerhoff, *Survey of food-grade silica dioxide nanomaterial occurrence, characterization, human gut impacts and fate across its lifecycle*, SCIENCE OF THE TOTAL ENVIRONMENT. 2016; 565:902-912, ISSN 0048-9697.

[17] *Id.*

[18] *Id.*

[19] Bakerpedia, *Silicon Dioxide Also known as synthetic amorphous silica (SAS),* AMERICAN SOCIETY OF BAKING Available at https://dev.bakerpedia.com/ingredients/silicon-dioxide/

[20] *Supra*, note 16 (Yu Yang, James J. Faust, Jared Schoepf, Kiril Hristovski, David G. Capco, Pierre Herckes, Paul Westerhoff, *Survey of food-grade silica dioxide nanomaterial occurrence, characterization, human gut impacts and fate across its lifecycle*, Science of The Total Environment. 2016; 565:902-912, ISSN 0048-9697).

[21] Evonik Silica, Essential, Sustainable, and Safe, Industry Brochure 319 available at https://products.evonik.com/assets/28/44/IB_319_Evonik_silica_essential_sustainable_safe_E

8

as an "anticaking agent."[22] Non-nanostructured alternatives (which are also artificial as explained above) usually employ a completely different mode of action and in many cases do not perform as well as SAS as both anticaking agents and free-flow aids.[23] Thus, higher dosage of additives is necessary.[24] Here, it is extremely likely (above 90%) that the Products contain Synthetic Amorphous Silica since it is used in a small dosage for anticaking preservative purposes. As the name indicates it is "Synthetic" which means it is artificial.

36.    Synthetic Amorphous Silica is manufactured through controlled processes such as: Precipitated silica which is made by reacting sodium silicate with acid; Fumed (pyrogenic) silica which is made by burning silicon tetrachloride in a hydrogen-oxygen flame; and Silica gel which is made by polymerizing silicic acid.[25] All of these processes are synthetic (i.e., artificial).

37.    Synthetic amorphous silica is artificial because it is "intentionally manufactured" rather than occurring naturally.[26] Unlike crystalline silica, which is found in nature (such as quartz which is not in the Products), SAS is engineered to be highly pure and crystalline-free. It comes in different forms, including pyrogenic (fumed) silica, precipitated silica, silica gel, and colloidal silica.

38.    Commercial Synthetic Amorphous Silica, or Silicon Dioxide, can have a range of very fine silica particles down in the nano range. Commercial food-grade silica can contain nanoparticles, specifically synthetic amorphous silica (SAS), which is widely used as an

---

N_Asset_482844.pdfhttps://products.evonik.com/assets/28/44/IB_319_Evonik_silica_essential_sustainable_safe_EN_Asset_482844.pdf

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] Fruijtier-Pölloth C. T*he safety of nanostructured synthetic amorphous silica (SAS) as a food additive (E 551).* ARCH TOXICOL. 2016 Dec;90(12):2885-2916. doi: 10.1007/s00204-016-1850-4. Epub 2016 Oct 3. PMID: 27699444; PMCID: PMC5104814.

[26] Association of Synthetic Amorphous Silica Producers, *Synthetic Amorphous Silica explained* available at https://www.asasp.eu/about-sas/what-is-sas/

anticaking agent in food products.[27] Studies have confirmed the presence of nano silica (E551) in commercial food items, though its particle size and morphology are not always disclosed on labels.[28]

39.    Whether Defendant uses either non-crystalline food grade Silicon Dioxide or Synthetic Amorphous Silica variety does not matter since both are created by a synthetic and artificial process making the Silicon Dioxide in the Products artificial.

40.    Accordingly, the "No Artificial Preservatives" claim on the labels of the Products is false and misleading.

41.    If the Products truly contained non-artificial Silicon Dioxide, Defendant could have simply provided the documentation and avoided this lawsuit. Defendant's actions strongly indicate that the Silicon Dioxide in the Products is in fact artificial, and Defendant has decided to continue selling the Product with the deceptive Representation.

**THE SILICONE DIOXIDE IN THE PRODUCTS FUNCTIONS AS A PRESERVATIVE**

42.    The FDA defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

43.    The FDA lists Silicon Dioxide as an anticaking agent, antioxidant, and humectant, among other things.[29]

---

[27] Athinarayanan, J., Periasamy, V.S., Alsaif, M.A. et al. P*resence of nanosilica (E551) in commercial food products: TNF-mediated oxidative stress and altered cell cycle progression in human lung fibroblast cells*. CELL BIOL TOXICOL 30, 89–100 (2014). https://doi.org/10.1007/s10565-014-9271-8

[28] *Id.*

[29] https://www.hfpappexternal.fda.gov/scripts/fdcc/index.cfm?set=FoodSubstances&id=SILICONDIOXIDE

10

CLASS ACTION COMPLAINT

44. Anticaking agents prevent foods from sticking together and ensuring a product remains dry and free-flowing[30], antioxidants impede rotting[31], and humectants prevent things from drying out.[32]

45. By acting as an anti-caking agent (which Defendant specifically notes as its function on the back label), antioxidant, and humectant, Silicon Dioxide preserves the shelf-life of the Products and thus acts as a preservative, as it tends to prevent or retard deterioration. Silicon Dioxide is a preservative because it supports reductions in oxidation or moisture by its properties as discussed below.

46. Silicon Dioxide's ability to control moisture and prevent clumping directly contributes to food preservation. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.").[33]

47. Incorporation of precipitated Silicon Dioxide contributes to the stabilization of emulsions and suspensions, aiding in the maintenance of consistent textures and appearances in a range of food products. Its presence in dressings, sauces, and dairy-based products helps ensure that these formulations remain visually appealing and enjoyable to consumers over their intended shelf life.[34]

---

[30] The Basics of Anti-Caking Agents, https://www.ulprospector.com/knowledge/3306/fbn-the-basics-of-anti-caking-agents.

[31] Antioxidants versus Food Antioxidant Additives and Food Preservatives https://pmc.ncbi.nlm.nih.gov/articles/PMC6912551/.

[32] What are humectants, https://www.12taste.com/blogs/what-are-humectants-and-why-are-they-used-in-food-processing/.

[33] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

[34] RawPharma, *Precipitated Silicon Dioxide Food Grade 1Kg Pack* available at: https://rawpharmabiz.com/precipitated-silicon-dioxide-food-1kg-pack?srsltid=AfmBOooNn6PUYsJaeh-L8q6qbPsAhwXuL0TQ0xn2GBfadZLUB3U1yRa8

48.     Silicon Dioxide is highly adsorbent, meaning it can attract and hold moisture. By keeping products dry, it: (1) slows microbial growth (since many microbes need moisture); (2) prevents clumping in powdered goods; and (3) increases shelf life indirectly by maintaining texture and usability.

49.     Silicon dioxide slows microbial growth by controlling moisture levels. Many microbes require moisture to thrive, so by keeping food products dry, silicon dioxide helps limit conditions that would otherwise support bacterial or fungal growth. Silicon Dioxide's role as an anticaking agent in powdered foods, like the Products, contributes to preservation by reducing humidity-related spoilage.[35]

50.     Silicon Dioxide functions as a preservative in the Products regardless of whether Defendant intended to use it as a preservative. Silicon Dioxide functions as a preservative even if it is also added to the Products for some other use. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[36]

51.     Thus, Silicone Dioxide is functioning as a preservative in the Product.

### REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE LABELING STATEMENT AND SUFFERED ECONOMIC INJURY

52.     Consumers, like Plaintiffs, relied on Defendant's Representation when purchasing the Products.

---

[35] Ahmadi-Nouraldinvand, F., Sharifi, R.S., Siadat, S.A. et al. *Fascinating Role of Silicon dioxide Nanoparticles and Co-inoculation of Mycorrhiza and Rhizobacteria to Combat NaCl Stress: Changes in Physiological Characteristics, Uptake of Nutrient Elements, and Enhancing Photosystem II Activities in Wheat.* J SOIL SCI PLANT NUTR 24, 277–294 (2024). https://doi.org/10.1007/s42729-024-01640-0

[36] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

CLASS ACTION COMPLAINT

53.    The Representation on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[37]

54.    Plaintiffs and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiffs and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiffs and putative class members are entitled to damages and restitution for the purchase price or the price attributable to the deceptive Representation. Consumers, including Plaintiffs, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial preservative ingredient.

**PLAINTIFFS' PURCHASES OF THE PRODUCTS**

55.    Ms. Lyskoski purchased the Krusteaz® Cinamon Swirl Crumb Cake & Muffin Mix (gluten free version) at a Safeway retail store near her home in Santa Cruz County, California for approximately $4 per package in the past three years. Her last purchase is estimated to be during 2023-2024.

56.    Ms. Hill purchased the Krusteaz® Cinamon Swirl Crumb Cake & Muffin Mix (regular version) at a retail store (either a Walmart or Safeway) in Sacramento County, California for approximately $4 per package in the past three years. Her last purchase is estimated to be in late 2024 or the beginning of 2025.

---

[37] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, MINTEL (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

57.     Ms. Tucker purchased the Krusteaz® Cinamon Swirl Crumb Cake & Muffin Mix (regular version) at a Vons retail store near her home in Menifee, California for approximately $4 per package in the past three years. Her last purchase is estimated to be in the middle of 2024.

58.     Ms. Ambroisno purchased the Krusteaz® Cinamon Swirl Crumb Cake & Muffin Mix (regular version) at a Target retail store in Long Island, New York. for approximately $4 per package in the past three years. Her last purchase is estimated to be in May 2025.

59.     When purchasing the Products, Plaintiffs saw and relied on the "**NO ARTIFICIAL Flavors · Colors · Preservatives**" statement on the front of the packaging. Plaintiffs would not have purchased the Products, or would have paid less for the Products, had they known that the Products actually contain the artificial preservative Silicon Dioxide in direct contradiction to Defendant's "No Artificial Preservatives" promise. Like other consumers, Plaintiffs did not expect that Defendant would place a false statement about its crumb cake mix on the front of the package. Plaintiffs believe that it is not right for Defendant to lie to its customers.

60.     As a result, Plaintiffs suffered injury in fact when they spent money to purchase the Products they would not have purchased, or would have paid less for, absent Defendant's misconduct.

61.     Plaintiffs desire to purchase the Products again if the labels of the Products were accurate and if the Products actually were free from artificial preservatives or if the label no longer contained the deceptive Representation. However, as a result of Defendant's ongoing misrepresentations, Plaintiffs are unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products. Further, Plaintiffs are not a food scientists and will not know if the Products are re-formulated to truthfully contain no artificial preservatives making them at imminent risk of being harmed.

62.     As shown above, the manufacturing processes for Silicon Dioxide are complicated and cannot be determined without knowledge of food chemistry.

**NO ADEQUATE REMEDY AT LAW**

63.     Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

64.     Legal remedies that require more "stringent" proof, and are therefore harder to obtain, are not "equally prompt and certain."

65.     Plaintiffs are pleading the UCL claim in the alternative and asserts entitlement to equitable relief to recover the amounts paid for the Product to the extent those amounts (in whole or in part) are deemed not recoverable as damages for Plaintiffs' legal claims.

66.     Plaintiffs lack an adequate remedy at law if the amount of damages is less than the price paid for the goods and restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies.

67.     Damages might be deemed not recoverable for Plaintiffs' legal claims—specifically, because the UCL claim covers more conduct and therefore may be less burdensome to prove. This is because the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein, and may be less burdensome to prove than the CLRA and breach of express warranty. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products without the deceptive claims.

68.     Plaintiffs and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

69.     A primary litigation objective in this litigation is to obtain injunction requiring Defendant to remove the false "No Artificial Preservatives" statement on the label of the

15

Products. Injunctive relief is appropriate on behalf of Plaintiffs and members of the class because Defendant continues to misrepresent the Products with the Representation when the Products actually contain an artificial preservative ingredient.

70.    Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

71.    Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain an artificial preservative ingredient. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages).

72.    Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

73.    It is premature to determine whether an adequate remedy at law exists. No discovery has been conducted, and no expert reports have been exchanged. Defendant's internal documents may provide insight into different damages theories such as restitution in the form of the profits gained attributable to the conduct at issue.

## CLASS ACTION ALLEGATIONS

74.    Plaintiffs bring this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 on behalf of the following:

**California Class**
All California citizens who purchased the Products in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

**New York Class**
All New York citizens who purchased the Products in New York for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

**Nationwide Class**
All U.S. citizens who purchased the Products in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

(collectively, the "Class")

75.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

76.     Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

77.     The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

78.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs allege that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

79.     <u>Commonality</u>: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.      Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.      Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.      Whether Plaintiffs and the Class are entitled to injunctive relief;

e.      Whether Plaintiffs and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

80.     Typicality: Plaintiffs are members of the Class that Plaintiff seeks to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

81.     Adequacy: Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs seek to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiffs have a strong interest in vindicating the rights of the class; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

82.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

83.    Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

84.    Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

85.    Unless the Class is certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of Defendant's wrongful conduct. Unless a classwide

1    injunction is issued, Defendant will continue to commit the violations alleged and the members

2    of the Class and the general public will continue to be misled.

3    **FIRST CLAIM FOR RELIEF**

4    **Violation of California's Consumers Legal Remedies Act**

5    **Cal. Civ. Code §§ 1750, *et seq.***

6    86.    Plaintiffs reallege and incorporate by reference all allegations contained in this

7    complaint, as though fully set forth herein.

8    87.    Plaintiffs bring this claim under the CLRA individually and on behalf of the

9    California Class against Defendant.

10    88.    At all times relevant hereto, Plaintiffs and the members of the Class were

11    "consumer[s]," as defined in California Civil Code section 1761(d).

12    89.    At all relevant times, Defendant was a "person," as defined in California Civil

13    Code section 1761(c).

14    90.    At all relevant times, the Products manufactured, marketed, advertised, and sold

15    by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

16    91.    The purchases of the Products by Plaintiffs and the members of the Class were

17    and are "transactions" within the meaning of California Civil Code section 1761(e).

18    92.    Defendant disseminated, or caused to be disseminated, through its advertising,

19    false and misleading representations, including the Products' labeling that the Products with the

20    Representation. Defendant failed to disclose that the Products contain an artificial preservative

21    ingredient. This is a material misrepresentation and omission as reasonable consumer would find

22    the fact that the Products contain an artificial preservative ingredient to be important to their

23    decision in purchasing the Products. Defendant's Representation violates the CLRA in the

24    following ways:

25    a)    Defendant represented that the Products have characteristics, ingredients, uses,

26    and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

27    b)    Defendant represented that the Products are of a particular standard, quality, or

28    grade, which they are not (Cal. Civ. Code § 1770(a)(7));

20

c)      Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)      Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

93.     Defendant violated the CLRA because the Products were prominently advertised with the Representation but, in reality, the Products contain an artificial preservative. Defendant knew or should have known that consumers would want to know that the Products contain an artificial preservative.

94.     Defendant's actions as described herein were done with conscious disregard of Plaintiffs' and the Class members' rights and were wanton and malicious.

95.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

96.     Pursuant to California Civil Code section 1782(d), Plaintiffs and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

97.     Pursuant to California Civil Code section 1782, Plaintiffs will notify Defendant in writing by certified mail of the alleged violations of the CLRA and will demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiffs will amend the complaint to seek damages and all other available relief.

98.     Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

1

<u>SECOND CLAIM FOR RELIEF</u>

2

**Violation of California's Unfair Competition Law**

3

**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*

4      99.      Plaintiffs reallege and incorporate by reference all allegations contained in this

5      complaint, as though fully set forth herein.

6      100.     Plaintiffs bring this claim under the UCL individually and on behalf of the

7      California Class against Defendant.

8      101.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or

9      practice and any false or misleading advertising.

10     102.     Defendant committed unlawful business acts or practices by making the

11     Representation and omitted material facts (which constitutes advertising within the meaning of

12     California Business & Professions Code section 17200), as set forth more fully herein, and by

13     violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*,

14     California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by

15     breaching express warranties.

16     103.     Plaintiffs, individually and on behalf of the other Class members, reserves the

17     right to allege other violations of law, which constitute other unlawful business acts or practices.

18     Such conduct is ongoing and continues to this date.

19     104.     Defendant committed "unfair" business acts or practices by: (1) engaging in

20     conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and the

21     members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive,

22     unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and (3)

23     engaging in conduct that undermines or violates the intent of the consumer protection laws

24     alleged herein.

25     105.     There is no societal benefit from deceptive advertising.

26     106.     Plaintiffs and the other Class members paid for a Product that is not as advertised

27     by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an

28     artificial preservative) of which it had exclusive knowledge. While Plaintiffs and the other Class

members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

107.    Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no artificial preservatives.

108.    Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material Representation and omissions. This reliance has caused harm to Plaintiffs and the other members of the Class, each of whom purchased Defendant's Products. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

109.    Defendant's wrongful business practices and violations of the UCL are ongoing.

110.    Plaintiffs and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class seek interest in an amount according to proof.

111.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

112.    Pursuant to California Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the Class, seeks (1) restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

<u>**THIRD CLAIM FOR RELIEF**</u>

**Breach of Express Warranty**

113.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

114.    Plaintiffs bring this claim for breach of express warranty individually and on behalf of the Nationwide Class and California Class against Defendant.

115.    As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products followed the Representation.

116.    Plaintiffs and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the Representation.

117.    Defendant's Representation was part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class.

118.    In fact, the Product does not conform to Defendant's Representation because the Products contain an artificial preservative. By falsely representing the Products in this way, Defendant breached express warranties.

119.    Plaintiffs relied on Defendant's (the manufacturer) Representation on the Products' labels and advertising materials which provide the basis for an express warranty under common law.

120.    As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class were injured because they: (1) paid money for the Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's Representation about the characteristics of the Products was truthful.

CLASS ACTION COMPLAINT

121.    Had Defendant not breached the express warranty by making the false Representation alleged herein, Plaintiffs and Class Members would not have purchased the Products or would not have paid as much as they did for them.

#### FOURTH CLAIM FOR RELIEF

### Violations of New York General Business Law § 349

122.    Plaintiff Ambroisno realleges and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

123.    Plaintiff Ambroisno brings this claim on behalf of the New York Class.

124.    New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

125.    In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

126.    Plaintiff Ambroisno and the New York Class members are consumers who purchased the Products from Defendant for their personal use.

127.    By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of the Products that they contain "No Artificial Preservatives." Despite that Representation, however, the Products contain an artificial preservative ingredient.

128.    The foregoing deceptive acts and practices were directed at consumers.

129.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

130.    As a result of Defendant's deceptive practices, Plaintiff Ambroisno and the New York Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendant's misrepresentations.

131.    On behalf of herself and the New York Class members, Plaintiff Ambroisno seeks to recover actual damages or fifty dollars per unlawful transaction (i.e., for each sale of

25

1  the Products), whichever is greater, three times actual damages, and reasonable attorneys' fees

2  and costs.

3  <center>**FIFTH CLAIM FOR RELIEF**</center>

4  <center>**Violations of New York General Business Law § 350**</center>

5      132.   Plaintiff Ambroisno realleges and incorporate by reference all allegations

6  contained in this complaint, as though fully set forth herein.

7      133.   Plaintiff Ambroisno brings this count on behalf of the New York Class.

8      134.   New York's General Business Law § 350 prohibits false advertising in the

9  conduct of any business, trade, or commerce.

10      135.   Defendant violated New York General Business Law § 350 by representing on

11  the packaging of the Products that they contain "No Artificial Preservatives." Despite that

12  Representation, however, the Products contain an artificial preservative ingredient.

13      136.   The foregoing advertising was directed at consumers and was likely to mislead a

14  reasonable consumer acting reasonably under the circumstances.

15      137.   Defendant's misrepresentations have resulted in consumer injury or harm to the

16  public interest.

17      138.   As a result of Defendant's false advertising, Plaintiff Ambroisno and the New

18  York Class members suffered an economic injury because they would not have purchased or

19  would have paid less for the Products had they known the veracity of Defendant's

20  misrepresentations.

21      139.   On behalf of herself and the New York Class members, Plaintiff Ambroisno

22  seeks to recover their actual damages or five hundred dollars per unlawful transaction (i.e., for

23  each sale of the Products), whichever is greater, three times actual damages, and reasonable

24  attorneys' fees and costs.

25  <center>**REQUEST FOR RELIEF**</center>

26      Plaintiffs, individually, and on behalf of all others similarly situated, request for relief

27  pursuant to each claim set forth in this complaint, as follows:

28

<center>26</center>
<center>CLASS ACTION COMPLAINT</center>

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class representatives and appointing the undersigned counsel as Class Counsel;

b.      Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.      Ordering statutory damages in the amount of $50 per transaction pursuant to New York General Business Law § 349 and statutory damages in the amount of $500 per transaction pursuant to New York General Business Law § 350 for the New York Class;

d.      Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.      Ordering such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

Dated: June 3, 2025            CROSNER LEGAL, P.C.

By: */s/ Craig W. Straub*
Craig W. Straub

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
craig@crosnerlegal.com

Attorneys for Plaintiffs

27

1

**<u>Affidavit Pursuant to Civil Code Section 1780(d)</u>**

2

I, CRAIG W. STRAUB, declare as follows:

3

1.      I am an attorney duly licensed to practice before all of the courts of the State of

4

California. I am one of the counsel of record for Plaintiff.

5

2.      This declaration is made pursuant to § 1780(d) of the California Consumers

6

Legal Remedies Act.

7

3.      Defendant has done, and is doing, business in California, including in this

8

judicial district. Such business includes the marketing, promotion, distribution, and sale of the

9

Products within the State of California and this judicial district.

10

I declare under penalty of perjury under the laws of the State of California that the

11

foregoing is true and correct.

12

Executed June 3, 2025 at San Diego, California.

13

CROSNER LEGAL, P.C.

14

By:      */s/ Craig W. Straub*

15

Craig W. Straub

16

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210

17

Tel: (866) 276-7637
Fax: (310) 510-6429

18

craig@crosnerlegal.com

19

Attorney for Plaintiffs

20

21

22

23

24

25

26

27

28

28

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Craig W. Straub (249032) Kurt D. Kessler (327334)<br>Crosner Legal, P.C. 9440 Santa Monica Blvd Ste 301 Beverly Hills, CA 90210<br><br>TELEPHONE NO.: (866) 276-7637          FAX NO.: (310) 510-6429<br>EMAIL ADDRESS: craig@crosnerlegal.com, kurt@crosnerlegal.com<br>ATTORNEY FOR *(Name):* Plaintiffs, Carlie Lyskoski et al | *ELECTRONICALLY FILED*<br>Superior Court of California<br>County of Santa Cruz<br>6/3/2025 5:05 PM<br>Clerk of the Court by Deputy,<br>Karen Broughton |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CRUZ
STREET ADDRESS: 701 Ocean Street
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Cruz CA 95060
BRANCH NAME: Santa Cruz Courthouse

CASE NAME:
Lyskoski et al v. Continental Mills, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 25CV01765 |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $35,000)    [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [x] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
 a. [ ] Large number of separately represented parties
 b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
 c. [x] Substantial amount of documentary evidence
 d. [ ] Large number of witnesses
 e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
 f. [x] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify):* 5 - Cal. Civ. Code §1750, Cal. Bus. & Prof. Code §17200, breach of express warranty; cont.
5. This case [x] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: June 3, 2025
Craig W. Straub
_____
(TYPE OR PRINT NAME)     ▶     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET
CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
 Medical Malpractice– Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
 Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment *(non-domestic relations)*
 Sister State Judgment
 Administrative Agency Award *(not unpaid taxes)*
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
 Declaratory Relief Only
 Injunctive Relief Only *(non-harassment)*
 Mechanics Lien
 Other Commercial Complaint Case *(non-tort/non-complex)*
 Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | Clear this form |

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
6/3/2025 5:05 PM
Clerk of the Court, Deputy,
Kara Boughton

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CONTINENTAL MILLS, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CARLIE LYSKOSKI, KENDALL HILL, MICHELE TUCKER, and TAYLOR AMBROISNO,
individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Santa Cruz Couthouse<br><br>701 Ocean Street Santa Cruz, CA 95060 | CASE NUMBER:<br>*(Número del Caso):*<br><br>25CV01765 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Craig W. Straub, Crosner Legal P.C. 9440 Santa Monica Blvd. Suite 301 Beverly Hills, CA 90210 Tel: (866) 276-7637

| DATE:<br>*(Fecha)* | 6/3/2025 | Clerk, by<br>*(Secretario)* | _____ | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100  [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]