CROSNER LEGAL, P.C.
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVION

| | |
|---|---|
| CARLIE LYSKOSKI, KENDALL HILL, MICHELE TUCKER, and TAYLOR AMBROISNO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONTINENTAL MILLS, INC.,<br><br>Defendant. | Case No. 5:25-cv-06291-NW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND STRIKE ALLEGATIONS**<br><br>Assigned to the Hon. Noël Wise<br><br>Hearing Information:<br>Date: November 5, 2025<br>Time: 9:00 a.m.<br>Courtroom: 3 |

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE ALLEGATIONS

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................................... 1

II.     STATEMENT OF ISSUES TO BE DECIDED ......................................................... 2

III.    SUMMARY OF ALLEGATIONS ............................................................................. 3

        A.      The Silicon Dioxide in The Products Functions as a Preservative ......................... 3

        B.      The Silicon Dioxide in the Products is Artificial.................................................... 3

        C.      Plaintiffs Relied on the "No Artificial Preservatives" Claim ................................. 4

IV.     THE LEGAL STANDARDS....................................................................................... 4

V.      THE REASONABLE CONSUMER STANDARD ..................................................... 5

VI.     ARGUMENT............................................................................................................... 6

        A.      Plaintiffs Sufficiently Allege the Products Contain an "Artificial
                Preservative"........................................................................................................... 6

                1.      Plaintiffs' Adequately Allege the Silicon Dioxide in The Products
                        Functions as a Preservative..................................................................... 6

                2.      Plaintiffs Adequately Allege the Silicon Dioxide in the Products is
                        Artificial................................................................................................. 14

                3.      The Products' Back Label Does Not Clarify the Front Label
                        Deception ............................................................................................... 18

        B.      Plaintiffs Relied on the "No Artificial Preservatives" Label Claim When
                Purchasing the Products........................................................................................ 19

        C.      The Court May Elect to Exercise Jurisdiction Over The New York Claims........ 22

        D.      Plaintiffs State a Claim for Breach of Express Warranty .................................... 23

        E.      The Nationwide Class Claim Should be Analyzed at Class Certification ............ 23

        F.      Defendant's Attempt to Strike or Dismiss Punitive Damages Should Be
                Denied ................................................................................................................... 24

VII.    CONCLUSION.......................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ............... 22, 23

4

*Adams v. Kraft Heinz Co.*, 2022 WL 18776273 (M.D. Fla. Jan. 9, 2022) .................................... 12

5

*Albrigo v. Chobani, LLC*, 2025 WL 1930007 (S.D. Cal. July 11, 2025) .............................. 11, 12

6

*Aloudi v. Intramedic Rsch. Grp., LLC*, 729 F. App'x 514 (9th Cir. 2017) .................................... 9

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 5, 6

8

*Ashour v. Arizona Beverages USA LLC*, 2020 WL 5603382 (S.D.N.Y. Sept. 18, 2020) ............... 9

9

*Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795 (S.D.N.Y. 2021) ........................................ 17

10

*Bates v. Kashi Co.*, 2012 WL 12847001 (S.D. Cal. July 16, 2012) ............................................. 16

11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 5

12

*Branca v. Bai Brands, LLC*, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) .................................... 8

13

*Brand v. KSF Acquisition Corp.*, 2023 WL 3225409 (S.D. Cal. Mar. 17, 2023) ......................... 13

14

*Brazil v. Dole Foods Co., Inc.*, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013) .......................... 24

15

*Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017) ............................................. 22

16

*Brown v. Food for Life Baking Co.*, 658 F. Supp. 3d 732 (N.D. Cal. 2023) ............................... 20

17

*Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990 (N.D. Cal. Dec. 16, 2016) .............................. 13

18

*Cabrega v. Campbell Soup Co.*, 2019 WL 13215191 (E.D.N.Y. Nov. 18, 2019) ................... 9, 11

19

*Carbine v. Target Corp.*, 2025 WL 501829 (C.D. Cal. Feb. 13, 2025) ....................................... 15

20

*Clark v. Hershey Co.*, 2019 WL 2288041 (N.D. Cal. May 29, 2019) ............................................ 8

21

*Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) ............................................. 17

22

*Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205 (W.D.N.Y. 2022) ................................................. 21

23

*Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) .................................................................... 19

24

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) ............... 9, 18

25

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ....................................... 21

26

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) .................................... 25

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE ALLEGATIONS

*Engurasoff v. Coca-Cola Co.*, 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ........................ 7, 13

*Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................................ 12

*Fried v. Snapple Beverage Corp.*, 753 F. Supp. 3d 1145 (S.D. Cal. 2024) ........................... 11, 16

*Gitson v. Trader Joe's Co.*, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ............................... 2, 7

*Gumner v. PepsiCo, Inc.*, 2023 WL 9019040 (C.D. Cal. Aug. 3, 2023) ..................................... 21

*Gunaji v. State Farm General Insurance Company*,

    2024 WL 3468838 (C.D. Cal. June 4, 2024) .......................................................... 25

*Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100 (N.D. Cal. 2013) .................................. 20

*Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290 (S.D.N.Y. 2023) ........................................... 21

*Hayes v. Kraft Heinz Co.*, 2024 WL 4766319 (N.D. Ill. Nov. 13, 2024) ................................... 16

*Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043 (S.D. Cal. 2019) .......................................... 8, 16

*Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) ........ 8, 13

*Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ........... 16

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ............................................................ 20

*Hu v. Herr Foods, Inc.*, 2017 WL 11551822 (E.D. Pa. Sept. 26, 2017) ("*Hu II*") ...................... 12

*Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) ("*Hu I*") ................................. 10, 11

*Iglesias v. Arizona Beverages USA, LLC*, 2023 WL 4053803 (N.D. Cal. June 16, 2023) ........... 17

*Indiviglio v. B&G Foods*, Inc., 2023 WL 9022866 (S.D.N.Y. Dec. 29, 2023) ........................... 12

*Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ........................... 2, 7

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................................ 21

*Kelly v. Beliv LLC*, 640 F. Supp. 3d 286 (S.D.N.Y. 2022) ........................................................ 11

*Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 1586022 (N.D. Cal. Apr. 12, 2019) ........... 13

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ........................................ 15

*Kim v. Benihana, Inc.*, 2021 WL 1593248 (C.D. Cal. Feb. 24, 2021) ......................................... 5

*King v. Navy Fed. Credit Union*,

    713 F. Supp. 3d 729 (C.D. Cal. 2024), *aff'd*, 2025 WL 2178532 (9th Cir. Aug. 1, 2025) ....... 21

*Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*, 2022 WL 172315 (E.D. Cal. Jan. 19, 2022)....... 25

*Kubilius v. Barilla Am., Inc.*, 2019 WL 2861886 (N.D. Ill. July 2, 2019)..................................... 9

*Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310 (2011) ........................................................................ 20

*Lentz v. Sanderson Farms, Inc.*, 2020 WL 12656231 (N.D. Cal. Feb. 10, 2020) ........................ 23

*Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 6657809 (N.D. Cal. Nov. 21, 2014) ............... 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008)............................. 5

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ................................................................. 20

*McGinity v. Procter & Gamble Co.*, 69 F.4th 1093 (9th Cir. 2023 ....................................... 18, 19

*McKinney v. Corsair Gaming*, Inc., 2022 WL 2820097 (N.D. Cal. July 19, 2022) .................... 23

*Meintser v. T-Mobile USA, Inc.*, 2024 WL 4289579 (E.D. Cal. Sept. 25, 2024) ........................ 25

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097 (9th Cir. 2008) .................................... 4

*Miller v. Ghiradelli Chocolate Co.*, 912 F.Supp.2d 861 (N.D. Cal. 2012)................................. 24

*Moore v. EO Prod., LLC*, 2023 WL 6391480 (N.D. Cal. Sept. 29, 2023) ................................... 23

*Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020) ................................................. 5

*Morris v. Mott's LLP*, 2019 WL 948750 (C.D. Cal. Feb. 26, 2019) ............................................. 8

*Muldoon v. DePuy Orthopaedics, Inc.*, 2024 WL 3522204 (N.D. Cal. July 23, 2024)............... 24

*Noohi v. Kraft Heinz Co.,* 2020 WL 5554255 (C.D. Cal. July 20, 2020)..................................... 9

*Oppenheimer v. Southwest Airlines Co.*, 2013 WL 3149483 (S.D. Cal. June 17, 2013).......... 2, 25

*Pelayo v. Conagra Brands, Inc.*, 2024 WL 3544621 (N.D. Cal. May 2, 2024) .......................... 10

*Prescott v. Bayer HealthCare LLC*, 2020 WL 4430958 (N.D. Cal. July 31, 2020)..................... 5

*Prime Healthcare Servs., Inc. v. Harris*, 216 F. Supp. 3d 1096 (S.D. Cal. 2016)...................... 15

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015)............................................................ 6

*Ringler v. J.M. Smucker Co.*, 2025 WL 1674390 (C.D. Cal. May 13, 2025)............................. 16

*Robie v. Trader Joe's Co.*, 2021 WL 2548960 (N.D. Cal. June 14, 2021).................................. 17

*Ryan v. Starco Brands, Inc.*, 2024 WL 5102651 (N.D. Cal. Apr. 19, 2024)............................... 21

*Salazar v. Target Corp.*, 83 Cal. App. 5th 571 (2022) ................................................................ 6

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE ALLEGATIONS

*Sandoval v. Pharmacare US, Inc.*, 730 F. App'x 417 (9th Cir. 2018)............................................ 23

*Santos v. CarMax Bus. Servs., LLC*, 2018 WL 7916823 (N.D. Cal. May 8, 2018) .................... 24

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012)...................................... 21

*Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ....................... 9

*Simeone v. T. Marzetti Co.*, 2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) .................................. 9

*Sims v. Campbell Soup Co.*, 2018 WL 7568640 (C.D. Cal. Sept. 24, 2018)................................. 8

*Squeo v. Campbell Soup Co.*, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024)............... 2, 10, 11, 15

*Stardock Sys., Inc. v. Reiche*, 2019 WL 8333514 (N.D. Cal. May 14, 2019)............................. 25

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .............................................................................. 6

*Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) .................................. 8, 16

*Svensrud v. Frito-Lay N. Am., Inc.*, 2020 WL 8575056 (C.D. Cal. Dec. 21, 2020).................... 12

*Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019).................... 10, 17

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,

    2014 WL 1048710 (N.D. Cal. Mar. 14, 2014) ...................................................................... 24

*Taylor v. Walmart, Inc.*, 2025 WL 1600395 (C.D. Cal. June 4, 2025).......................... 2, 8, 11, 16

*Thomas v. Costco Wholsale Corp.*, 2014 WL 1323192 (N.D. Cal. Mar. 31, 2014) ..................... 7

*Trammell v. KLN Enters., Inc.*, 2024 WL 1722243 (S.D. Cal. Apr. 22, 2024) ........................... 12

*Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020 (S.D.N.Y. June 8, 2020)............................. 17

*Urban v. Tesla*, 698 F.Supp.3d 1124 (N.D. Cal. Oct. 13, 2023) ............................................... 24

*Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024)................. 10

*Vineyard v. La Terra Fina USA, LLC*, 2025 WL 958319 (S.D. Ill. Mar. 31, 2025)......... 10, 12, 17

*Vitort v. The Kroger Co.*, 2023 WL 3143690 (9th Cir. Apr. 28, 2023)...................................... 18

*Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718 (N.D. Cal. 2024)............................... 5, 24

*Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219 (S.D.N.Y. 2011) .................................................. 5

*West v. Rheem Mfg. Co.*, 765 F. Supp. 3d 976 (C.D. Cal. 2025)................................................ 21

*Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024)............................................ 19

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE ALLEGATIONS

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ......................................................... 5

*Yamasaki v. Zicam LLC*, 2021 WL 4951435 (N.D. Cal. Oct. 25, 2021) ..................................... 17

*Young v. Neurobrands, LLC*, 2020 WL 11762212 (N.D. Cal. Oct. 15, 2020) ........................... 16

*Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .................... 24

*Zuchowski v. SFC Global Supply Chain, Inc.*,

    2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022) ................................................................. 10, 12

## Statutes

California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA") ............ 4

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (UCL") ......... 4, 5

New York General Business Law ("GBL") §§ 349 and 350 ......................................................... 4

## Rules

Fed. R. Civ. P.  8(a) ............................................................................................................................ 4

Fed. R. Civ. P. 12(b)(6) ...................................................................................................................... 4

Fed. R. Civ. P. 15(a)(2) ..................................................................................................................... 25

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE ALLEGATIONS

Plaintiffs Carlie Lyskoski, Kendall Hill, Michele Tucker, and Taylor Ambroisno respectfully submit this opposition to Defendant Continental Mills, Inc.'s motion to dismiss a Plaintiffs' complaint (ECF No. 1-1) and strike allegations. *See* ECF No. 14 ("MTD").

## I.    INTRODUCTION

In this straightforward false advertising action, Plaintiffs allege Defendant falsely labels its Krusteaz® cake and muffin mixes as having "**NO ARTIFICIAL Flavors · Colors · Preservatives**" even though they contain the artificial preservative silicon dioxide (the "Products").

Plaintiffs support their allegations with detailed references to industry documents, peer-reviewed publications, and federal regulations and guidance, all of which explain why and how the silicon dioxide in the Products is "artificial" and functions as a preservative. *See* ¶¶ 25–51.[1] Plaintiffs also allege why consumers are deceived by the false label, including survey research confirming that reasonable consumers interpret labels like "No Artificial Preservatives" to mean that the Products contain no synthetic preservative ingredients. ¶ 53.

First, Defendant argues that silicon dioxide is merely an "anticaking" agent and not a preservative. But Plaintiffs allege—with factual support and citations—that silicon dioxide functions as a preservative because it prevents or retards deterioration by controlling moisture, reducing oxidation, preventing clumping, slowing microbial growth, reducing humidity, and extending shelf life. ¶¶ 44–49. Plaintiffs further allege that "silicon dioxide functions as a preservative in the Products regardless of whether Defendant intended to use it as a preservative," because a preservative is "any chemical that, when added to food, tends to prevent or retard deterioration." ¶ 50.

Second, Defendant argues silicon dioxide is not "artificial" claiming it may be "naturally derived." But Plaintiffs allege that the silicon dioxide in the Products is artificial because it is chemically prepared and synthetically manufactured through controlled precipitation and related industrial processes. ¶ 35. Plaintiffs further allege that 90% of the food-grade silicon dioxide used

---

[1] All citations to "¶" or "¶¶" reference the complaint, ECF No. 1-1.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE ALLEGATIONS

in the industry is Synthetic Amorphous Silica ("SAS"), which is, by definition, synthetically produced. ¶¶ 29, 32, 35. Because the Products are powdered, they are even more likely to contain SAS. ¶¶ 35, 44. These allegations are supported by extensive citations to published research and food industry practices. ¶¶ 25–41. The FDA confirms the synthetic production process: "[t]he food additive silicon dioxide . . . is manufactured by vapor phase hydrolysis or by other means. . ." ¶ 33 (quoting 21 C.F.R. § 172.480(a)).

Moreover, Defendant's arguments conflict with the overwhelming weight of authority holding that disputes about whether an ingredient is an "artificial preservative" cannot be resolved at the pleadings stage. Courts across this Circuit and beyond have repeatedly denied motions to dismiss in cases involving nearly identical allegations. *See infra*, §§ VI.A.1–2. (collecting more than a twenty cases including *Squeo v. Campbell Soup Co.*, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024); *Gitson v. Trader Joe's Co*., 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014); *Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013); *Taylor v. Walmart, Inc.*, 2025 WL 1600395 (C.D. Cal. June 4, 2025).

Defendant next argues that the Court lacks jurisdiction over Ms. Ambroisno's New York claims. But the Court may exercise pendent personal jurisdiction over those claims. Defendant also challenges the class definition, but that argument is premature and should be resolved at class certification. Finally, Defendant's attempt to strike punitive damages should be denied. "[B]ecause punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed. R. Civ. P. 12(b)(6)." *Oppenheimer v. Southwest Airlines Co.*, 2013 WL 3149483, at *4 (S.D. Cal. June 17, 2013).

Accordingly, Defendant's motion should be denied.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Plaintiffs plausibly allege the "No Artificial Preservatives" label is misleading.

2.    Whether Plaintiffs plausibly allege reliance on the "No Artificial Preservatives" claim.

3.    Whether the New York claims should be dismissed.

4.    Whether Plaintiffs breach of express warranty claims may proceed on behalf of a

1  nationwide and California class.

2      5.    Whether dismissal or striking of nationwide class claims is appropriate at the pleading

3  stage.

4      6.    Whether Plaintiffs' request for punitive damages may be stricken or dismissed.

5  **III.    SUMMARY OF ALLEGATIONS**

6          Plaintiffs allege that the Products' front-label claim—"**NO ARTIFICIAL Flavors ·**

7  **Colors · Preservatives**"—is false because the Products contain manufactured silicon dioxide, an

8  artificial preservative ingredient. ¶¶ 2–3.

9      **A.  The Silicon Dioxide in The Products Functions as a Preservative**

10         Plaintiffs allege that silicon dioxide functions as a preservative because it "tends to prevent

11 or retard deterioration" of food. ¶ 42 (citing 21 C.F.R. § 101.22(a)(5) and dictionary definition).

12 Silicon dioxide is used in the Products as an anticaking agent, antioxidant, and humectant—each

13 of which contributes to preservation by keeping foods dry and free-flowing, impeding spoilage,

14 and preventing texture loss. ¶¶ 43–44.

15         Specifically, Plaintiffs allege that silicon dioxide in the Products:

16         ➢  controls moisture and prevents clumping, ¶ 46;

17         ➢  is highly adsorbent, keeping products dry and usable, ¶ 48;

18         ➢  slows microbial growth by limiting the moisture microbes need to thrive, ¶ 49; and

19         ➢  reduces humidity-related spoilage in powdered foods like the Products. ¶ 49.

20 In short, silicon dioxide preserves the Products' shelf life, whether or not Defendant subjectively

21 intended to use it for that purpose. ¶ 50.

22     **B.  The Silicon Dioxide in the Products is Artificial**

23         Plaintiffs further allege that the silicon dioxide in the Products is artificial. ¶ 25. Unlike

24 crystalline silica, which is hazardous and not used in foods, food-grade silicon dioxide is

25 synthetically manufactured to create non-crystalline, amorphous forms. ¶¶ 28–29. Safety Data

26 Sheets describe the ingredient as "chemically prepared." ¶ 30.

27         Silicon dioxide is produced by synthetic processes—either vapor-phase hydrolysis (fumed

28 silica) or wet chemistry (hydrous silica). ¶ 34. Regulatory materials confirm that "the food additive

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND STRIKE ALLEGATIONS

1  silicon dioxide . . . is manufactured by vapor phase hydrolysis or by other means whereby the

2  particle size is such as to accomplish the intended effect." ¶ 33

3      The food industry overwhelmingly relies on synthetic amorphous silica ("SAS"), which

4  accounts for 90% of food-grade silicon dioxide. ¶ 35. SAS is also the preferred form in powdered

5  foods like the Products because of its superior flow properties. ¶¶ 35, 44. Because SAS is

6  synthetically created, Plaintiffs allege it is artificial. ¶¶ 35, 39. Whether the Products contain SAS

7  or another non-crystalline form, both are created through artificial manufacturing processes and

8  are therefore "artificial." ¶ 39.

9     **C.  Plaintiffs Relied on the "No Artificial Preservatives" Claim**

10      Plaintiffs allege they saw and relied on the "NO ARTIFICIAL Flavors · Colors ·

11  Preservatives" statement on the Products' packaging. ¶ 59. They would not have purchased the

12  Products, or would have paid less, had they known the Products contained the artificial

13  preservative silicon dioxide. ¶ 59. Plaintiffs understood "No Artificial Preservatives" to mean that

14  no synthetic or chemically modified preservatives were present. ¶ 26.

15      Consumer survey research underscores this reliance: 84% of American consumers buy

16  "free-from" foods to avoid artificial or processed ingredients; 71% view "preservative-free" claims

17  as especially important. ¶ 53. Plaintiffs thus reasonably expected Defendant's "No Artificial

18  Preservatives" representation to be truthful, but it was not. ¶ 59.

19      On these allegations, Plaintiffs assert claims under California's Consumers Legal

20  Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), California's Unfair Competition Law,

21  Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), New York General Business Law ("GBL") §§

22  349 and 350, and for breach of express warranty under both nationwide and California law

23  **IV.  THE LEGAL STANDARDS**

24      Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

25  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

26  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal

27  theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp.*

28  *Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff

need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

"Rule 12(f) allows the Court to 'strike ... any redundant, immaterial, impertinent, or scandalous matter.' A motion to strike is a drastic remedy" which is why "[t]hese motions are generally disfavored." *Vizcarra v. Michaels Stores, Inc.*, 710 F. Supp. 3d 718, 723 (N.D. Cal. 2024) (Wise, J.).

## V.    THE REASONABLE CONSUMER STANDARD

To determine whether an advertising claim is false or misleading under the UCL and CLRA, courts apply the "reasonable consumer" standard, under which the plaintiff "must show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "The 'reasonable consumer' is 'an ordinary consumer acting reasonably under the circumstances, who is not versed in the art of inspecting and judging a product, [or] in the process of its preparation or manufacture.'" *Kim v. Benihana, Inc.*, 2021 WL 1593248, at *3 (C.D. Cal. Feb. 24, 2021). The New York's GBL applies the same test. *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 227–28 (S.D.N.Y. 2011).

In applying this standard under Rule 12(b)(6), "the Court must accept [p]laintiffs' view of the reasonable consumer's understanding," not Defendant's attempt to substitute its own version. *Prescott v. Bayer HealthCare LLC*,  2020 WL 4430958, at *8 (N.D. Cal. July 31, 2020). Ninth Circuit authority is clear that "[w]hether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer or motions to dismiss." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). Dismissal is appropriate only in the "rare situation" where deception is impossible as a matter of law. *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th

Cir. 2015); *accord Williams*, 552 F.3d at 939.

As the California Court of Appeal has emphasized, "'[w]hat matters . . . is how consumers actually behave—how they perceive advertising and how they make decisions.'" *Salazar v. Target Corp.*, 83 Cal. App. 5th 571, 579 (2022) (quoting *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 481 (7th Cir. 2020)). These are factual questions "subject to proof that can be tested at trial," not disposed of at the pleadings stage. *Id.* At this juncture, dismissal is appropriate only if, viewing the allegations "in the light most favorable to the plaintiff," it is *impossible* to conclude that a reasonable consumer is likely to be deceived. *Williams*, 552 F.3d at 937, 939; *see also Ashcroft*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement'…"). Where two plausible interpretations exist—one advanced by Defendant and one by Plaintiffs—Rule 12(b)(6) requires that Plaintiffs' allegations be taken as true at this stage. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

This case is far from the "rare situation" where deception is impossible. Plaintiffs plausibly allege that reasonable consumers would understand "No Artificial Preservatives" to mean the Products contain no synthetic ingredients that extend shelf life—a core preservative function.

## VI.    ARGUMENT

### A.    Plaintiffs Sufficiently Allege the Products Contain an "Artificial Preservative"

Silicon dioxide is artificial and is a preservative. *See supra* at § III. Thus, the "No Artificial Preservatives" statement on the front of the labels is false. As shown below, Defendant struggles with Plaintiffs' factual allegations and misconstrues the reasonable consumer pleading standard.

#### 1.    Plaintiffs' Adequately Allege the Silicon Dioxide in The Products Functions as a <u>Preservative</u>

Defendant argues Plaintiffs allegations are "speculation and innuendo" and have failed to allege the silicon dioxide in the Products functions as a preservative. MTD at 7. That is incorrect.

<u>Plaintiffs' Allegations</u>

A "preservative" is defined by the FDA as "any chemical that, when added to food, *tends* to prevent or retard deterioration." ¶ 46. Dictionaries similarly define it as "something that

preserves or *has the power of preserving*." *Id.* Plaintiffs allege the silicon dioxide in the Products does exactly that—preventing deterioration and extending shelf life. *See, e.g.*, ¶ 45 ("By acting as an anticaking agent, antioxidant, and humectant, silicon dioxide preserves the shelf life of the Products and thus acts as a preservative, as it tends to prevent or retard deterioration."); ¶ 48 ("Silicon dioxide's role as an anticaking agent in powdered foods, like the Products, contributes to preservation by reducing humidity-related spoilage.") (citing published literature). Plaintiffs further allege that silicon dioxide's inherent properties make it a preservative, because it is highly adsorbent and attracts and holds moisture, thereby slowing microbial growth, preventing clumping, and increasing shelf life. ¶¶ 48–49.

<u>Case Law Supporting Plaintiffs' "Preservative" Allegations</u>

Courts have repeatedly held that whether an ingredient functions as a preservative or, similarly, a flavoring agent is a factual question not suitable for resolution on a motion to dismiss:

- *Gitson v. Trader Joe's Co.*, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014) (whether tocopherol, citric acid, and sodium citrate are used as artificial flavor or chemical preservatives could not be decided at pleading stage)

- *Ivie v. Kraft Foods Glob., Inc.*, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) (whether maltodextrin functions as a sweetener or sodium citrate as a flavor, and whether consumers would be misled by a "no artificial sweeteners or preservatives" label, are fact issues not resolvable on a motion to dismiss)

- *Engurasoff v. Coca-Cola Co.*, 2014 WL 4145409, at *4 (N.D. Cal. Aug. 21, 2014) (following *Ivie* and finding "it cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor")

- *Leonhart v. Nature's Path Foods, Inc.*, 2014 WL 6657809, at * 6 (N.D. Cal. Nov. 21, 2014) (whether tocopherol was a preservative was factual issue)

- *Thomas v. Costco Wholsale Corp.*, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) (finding "preservative free" label plausibly deceptive where products contained

tocopherols, rejecting argument they were "natural tocopherols")

- *Clark v. Hershey Co.*, 2019 WL 2288041, at *3 (N.D. Cal. May 29, 2019) (denying summary judgment: "There is a genuine dispute as to whether malic acid acts as a flavoring agent in the [defendant's] products.")

- *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1047 (S.D. Cal. 2019) (whether malic acid is used as a flavoring agent cannot be resolved at the pleading stage)

- *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 5617701, at *5 (S.D. Cal. Oct. 30, 2018) (denying motion for summary judgement because plaintiff presented evidence ingredients acted as flavor)

- *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1147 (S.D. Cal. 2021) ("Whether these substances function as artificial additives or preservatives is an inappropriate inquiry at this stage.")

- *Taylor v. Walmart, Inc.*, 2025 WL 1600395, at *4–5 (C.D. Cal. June 4, 2025) (plaintiffs' allegations sufficient where they identified the preservative, its artificial nature, and its function)

- *Olmos v. T. Marzetti Co.*, 2022 WL 18358950 (C.D. Cal. Oct. 11, 2022) (allegations sufficient where plaintiffs alleged the preservative function, its artificial nature, and its prevalence in the food industry)

- *Branca v. Bai Brands, LLC*, 2019 WL 1082562, at * 4–5 (S.D. Cal. Mar. 7, 2019) (same for malic acid alleged as artificial flavor)

- *Morris v. Mott's LLP*, 2019 WL 948750, at * 4 (C.D. Cal. Feb. 26, 2019) (rejecting argument malic acid functions only as pH control agent)

- *Sims v. Campbell Soup Co.*, 2018 WL 7568640, at * 5 (C.D. Cal. Sept. 24, 2018) (factual dispute whether malic acid is a flavor not resolvable at pleadings stage)

- *Allred v. Frito-Lay N. Am., Inc.,* 2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) (whether malic acid functions as "artificial flavor" or "flavor enhancer" is a factual

determination inappropriate on motion to dismiss)

- *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *4 (C.D. Cal. July 20, 2020) (same)

-  *Ashour v. Arizona Beverages USA LLC*, 2020 WL 5603382, at *1, *5 (S.D.N.Y. Sept. 18, 2020) (allegations citric acid "prevent[s] the growth of bacteria" sufficient to show ingredient is a preservative)

- *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) (allegation ingredient "stabilizes the Products' active ingredients" sufficient to show a preservative)

- *Kubilius v. Barilla Am., Inc.*, 2019 WL 2861886, at * 4 (N.D. Ill. July 2, 2019) (rejecting requirement that plaintiff plead facts showing preservative function in the specific product)

- *Cabrega v. Campbell Soup Co.*, 2019 WL 13215191, at *10 (E.D.N.Y. Nov. 18, 2019) (complaint plausibly alleged citric and ascorbic acids functioned as preservatives)

- *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at * 8 (E.D.N.Y. Sept. 14, 2015) (whether phosphoric acid is a preservative is "a question of fact")

<u>Distinguishing Defendant's Cases</u>

In support of its argument, Defendant cites *Aloudi*. But it involved a "clinically proven" label on a weight-loss supplement where the plaintiff failed to allege any clinical testing had been conducted and disproved the claim. *Aloudi v. Intramedic Rsch. Grp., LLC*, 729 F. App'x 514, 515–16 (9th Cir. 2017). This case is entirely different: Plaintiffs allege detailed facts showing why silicon dioxide functions as an artificial preservative in the Products. Defendant's citation to *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) is unrelated to this action—it involved a conspiracy to inflate real estate rental payments. *Id.* at 999. The plaintiff there failed to allege facts about the properties' fair market value upon which the case hinged. Here, by contrast, Plaintiffs allege detailed facts showing why silicon dioxide functions as a preservative and why the "No Artificial Preservatives" label is false and misleading, including citations to scientific literature and specific explanations of how the ingredient extends shelf life. *See* ¶¶ 43–50.

Likewise, in *Pelayo*, the court dismissed because plaintiffs "are required to plausibly allege that Conagra uses an artificial form of citric acid, and not merely assert that is so." *Pelayo v. Conagra Brands, Inc.*, 2024 WL 3544621, at *1 (N.D. Cal. May 2, 2024). Notably, the court granted leave to amend, observing that "[i]t may be that credible reports and studies about food industry practices on that score would be enough to establish plausibility." *Id*. Courts have distinguished *Pelayo* where, as here, plaintiffs provide supported and detailed allegations regarding the ingredient's function in the products at issue. For example, in *Squeo v. Campbell Soup Company*, the court distinguished *Pelayo* and found it plausible that the products at issue contained an artificial preservative based on industry practices. *Squeo*, 2024 WL 4557680, at *4. Further, the court also rejected the same argument that Defendant makes here: that the mere presence of silicon dioxide does not show it functioned as a preservative or that Defendant intended to use it as one. *Id*. at 6. Plaintiffs in *Squeo* expressly alleged the ingredient at issue "functions as a preservative in the [food product] regardless of whether Defendants intended to use citric acid as a preservative" and even "when present at low levels." *Id*. Here, Plaintiffs' allegations are near-identical: "Silicon Dioxide functions as a preservative in the Products regardless of whether Defendant intended to use it as a preservative. Silicon Dioxide functions as a preservative even if it is also added to the Products for some other use." ¶ 50.

Defendant also relies on out-of-circuit cases to argue that generalized statements about ingredients and industry practices are insufficient. MTD at 8 (citing (1) *Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024); (2) *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019); (3) *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017) ("*Hu I*"); (4) *Zuchowski v. SFC Global Supply Chain, Inc.*, 2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022); (5) *Vineyard v. La Terra Fina USA, LLC*, 2025 WL 958319 (S.D. Ill. Mar. 31, 2025)).

None of these cases should be followed here. Plaintiffs allege detailed facts showing that silicon dioxide functions as a preservative in the Products. *See*, *e.g.*, *Squeo*, 2024 WL 4557680, at

\*4–5 (distinguishing *Valencia* and *Tarzian* because those cases relied on generalized allegations that an ingredient was "industrially made" or "economically viable," whereas *Squeo* alleged the prevalence and preservative function of citric acid in food); *id.* at \*6 (rejecting *Hu* because "if citric acid generally functions as a preservative when added to food, then it is reasonable to infer at the pleading stage that it did so as an ingredient in the chips."); *id.* (noting *Zuchowski* is "unavailing" because "Plaintiffs have alleged more broadly that citric acid functions as a preservative when added to food in general"); *Taylor*, 2025 WL 1600395, at \*4–5 (distinguishing *Valancia* and *Tarzian* and stating, "**courts in this circuit have explicitly rejected such arguments**" in cases with materially identical factual context) (emphasis added); *Fried v. Snapple Beverage Corp.*, 753 F. Supp. 3d 1145, 1152 (S.D. Cal. 2024) (observing that *Tarzian* and *Valencia* are less persuasive as out-of-circuit decisions); *Albrigo v. Chobani, LLC*, 2025 WL 1930007, at \*7 (S.D. Cal. July 11, 2025) (finding *Valencia* and *Tarzian* unavailing because plaintiffs provided more than generalized statements).

Defendant's citation to *Hu I* is unavailing because the plaintiff there failed to explicitly allege that the ingredient acted as a preservative in the product at issue. *Hu I,* 251 F. Supp. 3d at 821–822. Here, by contrast, Plaintiffs explicitly allege that "Silicon Dioxide preserves the shelf-life of the Products and thus acts as a preservative," and that "Silicon Dioxide's role as an anticaking agent in powdered foods, like the Products, contributes to preservation by reducing humidity-related spoilage." ¶¶ 45, 49.

Other courts have recognized this distinction and declined to follow *Hu I. See*, *e.g.*, *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 298 (S.D.N.Y. 2022) ("The *Hu* court's reasoning is unpersuasive. In reaching its decision, the district court noted that plaintiff had not supported her definition of preservative; however, as discussed, Plaintiff's definition of 'preservative' is supported by the common definition of that term."); *Cabrega,* 2019 WL 13215191, at \*10 ("[U]nlike the complaint in *Hu I*, the [complaint] plausibly alleges that the ingredients at issue, i.e., citric acid and ascorbic acid, actually function as a preservative in the Products."); *Adams v.*

*Kraft Heinz Co.*, 2022 WL 18776273, at *6–7 (M.D. Fla. Jan. 9, 2022) ("*Hu* was about whether certain ingredients acted as preservatives and was dismissed with leave to amend because the Plaintiff did not directly allege that the relevant ingredient functioned as a preservative in the products. Here, Plaintiff has plainly alleged that malic acid functions as a flavor …"). In *Hu II*, the court denied the renewed motion to dismiss, holding that the "[p]laintiff plausibly alleges that the statement 'No Preservatives Added' … is materially misleading because citric acid functions as a preservative in the Products." 2017 WL 11551822, at *1 (E.D. Pa. Sept. 26, 2017).

Similarly, *Zuchowski*, relied on by Defendant, does not support dismissal. There, the court held a "Preservative-Free" pizza crust label was not misleading because the plaintiff did "not explain how these ingredients operate as preservatives in Defendant's product, frozen pizzas, as opposed to breads and baked goods." *Id.* at *3. Here, Plaintiffs provide detailed allegations showing how silicon dioxide functions as a preservative in the Products, in similar powdered foods, and in food generally. ¶¶ 44–49. Moreover, *Zuchowski* conflicts with the in-circuit authority discussed above. In *Vineyard v. La Terra Fina USA, LLC*, the court focused on whether the ingredient was "artificial," so it is addressed below.[2]

<u>Defendant's FDA Argument Does Not Warrant Dismissal</u>

Next, Defendant contends that the FDA distinguishes "anticaking agents" and

---

[2] The cases cited on pages 8–9, footnote 3 of the MTD should not be followed either. In *Tramell*, unlike here, the plaintiff did not explain why and how the ingredient functioned as a flavor. *Trammell v. KLN Enters., Inc.*, 2024 WL 1722243, at *4 (S.D. Cal. Apr. 22, 2024). In *Svenrsud*, the ingredient list stated, "artificial flavors," but the plaintiff alleged that the company was required to place "Artificially Flavored" on the *front* of the product. *Svensrud v. Frito-Lay N. Am., Inc.*, 2020 WL 8575056, at *1 (C.D. Cal. Dec. 21, 2020). The case was preempted by federal law. *Id.* at *4. *Figy* involved an "All Natural" label but the complaint contained "no detail whatsoever about how or why the offending ingredients are unnatural." *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014). *Valencia* has been distinguished and not followed (*see supra*). *See Albrigo*, 2025 WL 1930007, at *7 (finding *Valencia* "unavailing" and holding allegations an ingredient in product is "industrially manufactured" sufficient). *Indiviglio* concerned and "All Fruit" label and the plaintiff "offered no supporting factual allegations about the source or preparation of" the ingredient at issue. *Indiviglio v. B&G Foods*, Inc., 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023).

"preservatives" because 21 CFR Part 172 separately lists substances in Subpart E (anticaking agents) and Subpart B (preservatives), and silicon dioxide appears in Subpart E. MTD at 9. First, numerous courts have held that FDA regulations are not a stand-in for consumer deception. *See Brand v. KSF Acquisition Corp.*, 2023 WL 3225409, at *6 (S.D. Cal. Mar. 17, 2023) (non-compliance with FDA regulation not enough to satisfy reasonable consumer test); *Bush v. Mondelez Int'l, Inc.*, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016) ("Courts, not the FDA, determine whether a product is misleading[.]"); *Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 1586022, at *5 (N.D. Cal. Apr. 12, 2019) (same).

Second, nothing in the FDA's regulatory framework prohibits dual use. Indeed, the FDA recognizes that food additives can serve overlapping purposes—such as maintaining freshness—even if listed under a single functional category.[3] Courts recognize this too. *See Hilsley*, 2018 WL 5617701, at *3 (concluding "simply because malic and fumaric acids are not on the FDA lists does not mean that the FDA has determined they are not artificial flavors"); *Engurasoff*, 2014 WL 4145409, at *3 ("[T]he absence of phosphoric acid on these lists does not mean that the FDA has made a finding that phosphoric acid is not an artificial flavor."). Here, by absorbing moisture and preventing clumping, silicon dioxide not only improves flow but also extends shelf life by inhibiting conditions under which mold, microbial growth, or chemical degradation can occur. In this sense, its anticaking role also serves the classic preservative purpose by delaying deterioration. Consumers reasonably understand a "preservative" as any additive that helps a food last longer, regardless of the technical regulatory category.

<u>Conclusion</u>

In sum, Plaintiffs have plausibly alleged that silicon dioxide functions as an artificial preservative, with detailed factual support. The Court should follow the numerous cases discussed

---

[3] *See* U.S. Food & Drug Administration. Food Additives and GRAS Ingredients - Information for Consumers (May 24, 2025), https://www.fda.gov/food/food-ingredients-packaging/food-additives-and-gras-ingredients-information-consumers. One such example is salt—it can function as a taste and flavor enhancer and a preservative. *See id.*

1    above and deny Defendant's motion.

2    **2.    Plaintiffs Adequately Allege the Silicon Dioxide in the Products is**

3    **<u>Artificial</u>**

4    Defendant largely rehashes its earlier arguments, claiming that silicon dioxide can have

5    "natural sources" and that dismissal is warranted because Plaintiffs have not proven beyond doubt

6    that the silicon dioxide in the Products is synthetic. MTD at 10–12. But this misses the point.

7    Plaintiffs allege that "artificial" is understood by consumers to mean an ingredient that has

8    undergone significant modification from its natural state. ¶ 26. The silicon dioxide in the Products

9    is created through synthetic manufacturing processes that consumers would consider artificial. ¶

10    27; *see also* supra, § III.B.

11    Defendant also misconstrues the pleading standard. Contrary to Defendant's assertion,

12    Plaintiffs are not required at the motion to dismiss stage to present "studies" or "scientific

13    analyses" specific to Defendant's Muffin Mix. It is enough that Plaintiffs plausibly allege—with

14    citations to peer-reviewed research and FDA sources—that the silicon dioxide used in foods is

15    overwhelmingly the synthetic variety. ¶¶ 32, 35, 44; *see also supra*, §§ IV–V (Legal Standards).

16    Courts have repeatedly held that such allegations suffice at this stage.

17    <u>Plaintiffs' Allegations</u>

18    The Complaint explains in detail why the silicon dioxide in the Products is artificial. Food-

19    grade silicon dioxide, also known as "Synthetic Amorphous Silica" ("SAS"), is non-crystalline

20    because crystalline silica is hazardous to human health. ¶¶ 29, 32. SAS and non-crystalline silicon

21    dioxide are synthetically produced—either thermally (e.g., fumed) or through wet chemistry. ¶¶

22    32, 34. The FDA confirms that the food additive silicon dioxide "is manufactured by vapor phase

23    hydrolysis or by other means whereby the particle size is such as to accomplish the intended

24    effect." ¶ 33. Industry peer-reviewed research shows that approximately 90% of the silicon dioxide

25    used in food is SAS, ¶ 32, and that SAS is the preferred form when silicon dioxide is used as an

26    anticaking agent and/or preservative because of its superior flow properties. ¶¶ 35, 44. Thus,

27    whether Defendant uses non-crystalline silicon dioxide or SAS, both are created by synthetic

28    processes that make the ingredient artificial. ¶ 39.

<u>Defendant's Exhibits A–B (RJN)</u>[4]

Defendant places outsized weight on the sources cited in the Complaint. Exhibit A to Defendant's Request for Judicial Notice (ECF No. 14-2, Ex. A) is an industry brochure that Plaintiffs cited for the allegation that SAS is the most commonly used form of silicon dioxide in food products, especially when a preservative is needed to flow freely in powdered mixes like the Products. ¶ 25. Defendant cherry-picks this brochure to suggest that silicon dioxide can be derived from natural sources. But the very same document makes clear that SAS is *manufactured*, and as Plaintiffs allege, that manufacturing occurs through synthetic chemical reactions (fuming, precipitation, or vapor-phase hydrolysis)—processes that reasonable consumers would understand as artificial. ¶¶ 33–35.

Exhibit B to Defendant's Request for Judicial Notice (ECF No. 14-2, Ex. B) was cited in the Complaint for the proposition that SAS is "intentionally manufactured." ¶ 37. While the document acknowledges that silica may occur in plants and other natural forms, the forms used in food products are synthetically produced and have undergone substantial chemical processing. *See* ECF No. 14-2, Ex. B. Defendant's selective reliance on these documents underscores a factual dispute, not a basis for dismissal. See *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (rejecting use of judicial notice to resolve competing interpretations of a document at the pleading stage). At most, Defendant's reliance on these documents highlights a factual dispute over how silicon dioxide is manufactured and perceived by consumers, which cannot be resolved on a motion to dismiss.

<u>The Case Law Supporting Plainffs' "Artificial" Allegations</u>

Courts in this Circuit and elsewhere routinely hold whether an ingredient is "artificial" is a fact intensive question that cannot be resolved on a motion to dismiss:

- *Squeo*, 2024 WL 4557680, at *4 (allegations that ingredient "is not the naturally occurring" type, is "manufactured," and that it "is not commercially feasible to use [the] natural" version sufficient to show it is artificial)

[4] The Court should not consider these documents "for the truth of the matters asserted therein." *Prime Healthcare Servs., Inc. v. Harris*, 216 F. Supp. 3d 1096, 1105 (S.D. Cal. 2016).

- *Carbine v. Target Corp.*, 2025 WL 501829, at *5 (C.D. Cal. Feb. 13, 2025) ("The important point is that the Court cannot, at this motion-to-dismiss stage, make such a fact-intensive determination about what a reasonable consumer would do when faced with facts about the use of manufactured citric acid in the products, as alleged.")

- *Ringler v. J.M. Smucker Co.*, 2025 WL 1674390, at *3 (C.D. Cal. May 13, 2025) (allegations about industry practices backed by citations sufficient; court refused to "weigh factual challenges to articles and academic studies relied upon in a complaint at the pleading stage")

- *Taylor*, 2025 WL 1600395, at *5 (allegations that ingredient is "derived from heavy chemical processing" involving modified "black mold" sufficient to allege "artificial")

- *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *2 (C.D. Cal. July 20, 2020) (allegation "it was cheaper" for defendants to use the artificial version sufficient)

- *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d at 1047 (whether malic acid is artificial "cannot be resolved at the pleading stage")

- *Hayes v. Kraft Heinz Co.*, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024) (allegations that "over 90% of the citric acid used around the globe today is produced from fermentation" sufficient to show artificialness)

- *Stewart, LLC*, 537 F. Supp. 3d at 1147–48 (reasonable consumer plausibly misled by advertising products as not containing artificial additives or preservatives)

- *Bates v. Kashi Co.*, 2012 WL 12847001, at *9 (S.D. Cal. July 16, 2012) (Whether "Nothing Artificial" label deceptive is better suited for summary judgment);

- *Fried*, 753 F. Supp. 3d at 1152 (allegations ingredient manufactured from "fermentation of crude sugars" sufficient to show artificialness)

Indeed, class actions have been certified that involved near-identical claims and allegations. *See*, *e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *4 (S.D. Cal. Nov. 29, 2018) (granting class certification and noting a common question is whether a "No artificial flavor" claim is likely to deceive reasonable consumers); *Young v. Neurobrands, LLC*, 2020 WL 11762212, at *3 (N.D. Cal. Oct. 15, 2020) (granting class certification where a common

question included whether a "no artificial color or flavors" claim is likely to deceive a reasonable consumers).

Distinguishing Defendant's Cases

Defendant's cases fare no better here. As discussed above, those decisions conflict with the weight of authority in this Circuit, where courts have upheld nearly identical allegations as sufficient to survive dismissal.

*Yamasaki* involved a "clinically proven "claim but the plaintiff did not provide any studies about three of the active ingredient in the product so the court dismissed the case on a lack of substantiation theory. *Yamasaki v. Zicam LLC*, 2021 WL 4951435, at *4 (N.D. Cal. Oct. 25, 2021). The case is not relevant. *Valencia* (S.D.N.Y.) which involved an "All Natural" claim is not followed or distinguished by courts in this Circuit along with others as discussed above. *Supra*, § VI.A.1 (also distinguishing *Pelayo*). The plaintiff's allegations in *Vineyard* (S.D. Ill.) did not even allege industry practice as the court noted the plaintiff "relies on even less." *Vineyard*, 2025 WL 958319, at *6. *Robie* involved a "Vanilla Flavor" claim and the plaintiff did not allege it was artificial even though both natural and artificial versions are commonly used. *See Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021). *Barreto* concerned "Vanilla Soymilk" where the ingredients stated, "Natural Vanilla Flavor With Other Natural Flavors," and the plaintiff failed to allege "no natural vanilla present as a flavoring." *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021). These allegations and labeling claims are not applicable here. Same with *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) which simply stated "Vanilla" on the label. *See id.* at *570.

Defendant again cites *Tarzian* to argue that Plaintiffs do not adequately allege the silicon dioxide in the Products is artificial. MTD at 7. In *Tarzian*, the plaintiff failed to allege which type of citric acid was used. *Tarzian*, 2019 WL 5064732, at *4. Courts have distinguished *Tarzian* when a plaintiff—like Plaintiffs here—specifically allege the type of artificial ingredient used in a product. *See*, *e.g.*, *Noohi*, 2020 WL 5554255, at *3 (distinguishing *Tarzian* because "Plaintiffs have explicitly alleged that Crystal Light contains artificial malic acid."); *Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020, at *9 (S.D.N.Y. June 8, 2020) (distinguishing *Tarzian* because the

-17-    Case No. 5:25-cv-06291-NW

plaintiff specifically alleged the type of artificial ingredient in the product); *Iglesias v. Arizona Beverages USA, LLC*, 2023 WL 4053803, at *4 (N.D. Cal. June 16, 2023) (same).

Next, Defendant claims the allegations are merely "generalized facts." Not true. As explained above, the allegations are specific to the ingredient and Products. The Ninth Circuit's decision in *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014), is not relevant here. There, the plaintiffs brought RICO claims based on allegedly inflated real estate prices, but the complaint contained "no facts" suggesting the increases were atypical in the market. *Id.* at 998. By contrast, Plaintiffs here have pled specific facts showing the ingredient is artificial. Similarly irrelevant is *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) which involved aftermarket stock sales alleged to contain misleading registration statements that require "a greater level of factual specificity." *Id.* at 1107.

Last, Defendant takes Plaintiffs' allegations out of context and argues that all foods are "produced by humans" and the labeling claims are thus not deceptive. Not so, Plaintiffs allege that "artificial" is understood by consumers to mean an ingredient that has undergone significant modification from its natural state. *See* ¶ 26. In support, Defendant again cites *Valencia* and *Pelayo* which are addressed above. *Vitort v. The Kroger Co.*, 2023 WL 3143690 (9th Cir. Apr. 28, 2023) involved a "Just Fruit" label where the plaintiff admitted that all ingredients were extracted from fruit. *Id.* at *1. The Court should follow the on-point cases Plaintiffs cite above.

### Conclusion

Taken together, Plaintiffs' allegations, supported by scientific literature and industry practice, easily clear the Rule 12(b)(6) standard. Defendant's arguments, by contrast, raise factual disputes that cannot be resolved on a motion to dismiss.

### 3. The Products' Back Label Does Not Clarify the Front Label Deception

Defendant argues that listing "silicon dioxide (anticaking agent)" on the back explains why the front label is not misleading. MTD at 13. In doing so, Defendant contends the "No Artificial Preservatives" statement is ambiguous. But unlike *McGinity*, on which Defendant relies, the "No Artificial Preservatives" claim is not vague like the "Nature Fusion" statement at issue there. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023) ("'Nature Fusion' could

mean any of a number of things: that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely."). Rather, it is clear and unambiguous: "artificial" means not naturally occurring, and "preservatives" are ingredients added to extend shelf life; together, the phrase promises that the product contains no synthetic preservation agents.

Moreover, "a front label is not ambiguous simply because it is susceptible to two possible meanings[.]" *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 781 (9th Cir. 2024). And "a consumer is not 'expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.'" *Id.* at 782 (quoting *Williams,* 552 F.3d at 939). As the Ninth Circuit has explained, "if a defendant *does* commit an act of deception on the front of a product, then 'the presence of fine print revealing the truth is insufficient to dispel that deception.'" *McGinity*, 69 F.4th at 1098 (emphasis original and quoting *Ebner v. Fresh, Inc*., 838 F.3d 958, 966 (9th Cir. 2016)).

Further, even if consumers consulted the back label, nothing is clarified. Simply listing "silicon dioxide (anti caking agent)" does not inform consumers whether the ingredient is artificial or natural. This is especially problematic because silicon dioxide can be natural or artificial—and Defendant uses the artificial type. *See* ¶ 37. Nor are consumers food chemists who would understand that an anticaking agent can also function as a preservative, or how preservatives may serve dual purposes. *See* ¶ 62 ("The manufacturing processes for Silicon Dioxide are complicated and cannot be determined without knowledge of food chemistry."); *see also* ¶¶ 42–50 (collecting published sources explaining how preservatives function and why silicon dioxide is a preservative in the Products). Thus, the back-label ingredient list does nothing to resolve the deception created by the front label.

### B.    Plaintiffs Relied on the "No Artificial Preservatives" Label Claim When Purchasing the Products

Defendant argues that Plaintiffs have not adequately alleged reliance or economic injury.

MTD at 14. The Complaint, however, pleads these elements in detail. Plaintiffs allege they "saw and relied" on the "No Artificial Preservatives" label when purchasing the Products, believing the claim to be true, and lost money because they would not have purchased—or would have paid less—had they known the truth. ¶¶ 59–60. Plaintiffs further allege when and where they bought the Products, how much they paid, and that Defendant profited from the deception by charging a price premium. ¶¶ 55–58. The Complaint also explains that Defendant's labeling and advertising scheme is designed to create the impression of a preservative-free, premium product, and that "free-from" claims command higher prices because consumers value them. ¶¶ 6, 51. Plaintiffs specifically allege they were deprived of the benefit of the bargain because the Products had less value than if the "No Artificial Preservatives" representation had been truthful. ¶ 120. Finally, Plaintiffs explain why the claim is false: silicon dioxide functions as a preservative (¶¶ 42–50) and is artificial by reasonable consumer standards (¶¶ 25–41). Thus, Plaintiffs allege not only reliance and injury, but also why the misrepresentation mattered to their purchasing decisions. ¶¶ 20, 92.

These allegations are sufficient. *See*, *e.g.*, *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1109 (9th Cir. 2013) (standing and reliance established where a plaintiff alleges that "(1) the defendant made a false representation about a product, (2) the consumer purchased the product in reliance on the misrepresentation, and (3) he would not have purchased the product otherwise."); *Kwikset Corp. v. Sup. Ct.*, 51 Cal.4th 310, 327–28 (2011) (reliance adequately alleged where plaintiffs pled that they "saw and relied on the labels for their truth in purchasing [defendant's] locksets" and that they "would not have bought the lockets otherwise") *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1130 (N.D. Cal. 2013) (allegations sufficient where plaintiff stated she "read the labels on Defendants' products . . . before purchasing them" and "based and justified" her decision to buy on the labeling); *Brown v. Food for Life Baking Co*., 658 F. Supp. 3d 732, 740–41 (N.D. Cal. 2023) (reliance shown where plaintiffs alleged they "looked at and read" the label and would "would not have purchased the products or paid less for them" if not misled). Indeed, the Ninth Circuit has recognized that a "quintessential injury-in-fact" arises when plaintiffs allege, they "spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Defendant cites cases with materially different allegations that bear little resemblance to this one. MTD at 14–15. In *Sateriale*, the plaintiffs did not identify a false statement at the time of purchase. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012). In *Kearns*, the plaintiff did not identify "what the television advertisements or other sales material specifically stated." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). In *Devey*, the plaintiff never alleged she saw the product labeling statement before her purchase. *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 214 (W.D.N.Y. 2022). In *West*, involving fraudulent concealment, the plaintiff failed to allege reliance on the warranty when purchasing the house, leaving it unclear how disclosure would have changed her conduct. *West v. Rheem Mfg. Co.*, 765 F. Supp. 3d 976, 992 (C.D. Cal. 2025). In *Ryan*, the plaintiff failed to allege how he determined the presence of milk in a product labeled "Dairy-Free." *Ryan v. Starco Brands, Inc.*, 2024 WL 5102651, at *5 (N.D. Cal. Apr. 19, 2024). In *Elias*, the plaintiff did not allege he ever saw the challenged website statements, or even that they were present on the website at the time of purchase. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012). In *King*, the plaintiff challenged a $15 returned-check fee but identified no misrepresentation, and the account agreement expressly disclosed the fee. *King v. Navy Fed. Credit Union*, 713 F. Supp. 3d 729, 733 (C.D. Cal. 2024), *aff'd*, 2025 WL 2178532 (9th Cir. Aug. 1, 2025). In *Gumner*, the plaintiff alleged PepsiCo added vitamins A and C to Gatorade Fit in violation of FDA rules, but the court dismissed because he failed to explain what "healthy" meant, granting leave to amend. *Gumner v. PepsiCo, Inc.*, 2023 WL 9019040, at *1, 4 (C.D. Cal. Aug. 3, 2023).[5] Here, by contrast, Plaintiffs allege exactly what was false, how they relied on it, and why the deception is plausible. *See supra*, § III.

Last, Defendant argues Plaintiffs did not allege how they would have acted differently absent the deception. But the Complaint squarely alleges: "Plaintiffs would not have purchased the Products, or would have paid less, had they known the Products actually contain the artificial

---

[5] Defendant also cites *Hawkins*. There, the court noted allegations that the plaintiff "would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it" were sufficient to confer injury. *Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 301 (S.D.N.Y. 2023).

preservative silicon dioxide in direct contradiction to Defendant's 'No Artificial Preservatives' promise." ¶ 59; *see supra* § III.C. These allegations are sufficient.

### C.    The Court May Elect to Exercise Jurisdiction Over The New York Claims

"[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc*., 368 F.3d 1174, 1180 (9th Cir. 2004) (collecting cases). "The exercise of pendent personal jurisdiction is within the court's discretion." *Id.* at 1181.

Defendant relies on *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255 (2017), but the concerns identified there are not present here. In *Bristol-Myers*, out-of-state plaintiffs filed individual product liability and misrepresentation claims in California state court against a defendant incorporated in Delaware and headquartered in New York. The Supreme Court rejected California's "sliding scale" approach to jurisdiction, emphasizing federalism concerns that arise when one state's courts assert power over residents of another state. *Id*. at 263–64. The Court expressly stated the "concerns the due process limits on the exercise of specific jurisdiction by a State" and that the decision "leave[s] open the question of whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1783–84.

Those concerns are not implicated in this case. This action was removed under the Class Action Fairness Act, *see* ECF No. 1, and is proceeding in federal court, which operates within a unitary federal system. The federalism issues at the core of *Bristol-Myers*—state sovereignty over nonresidents—are thus lessened. Moreover, the Supreme Court has explained that the "primary concern" in assessing personal jurisdiction is "the burden on the defendant." *Id.* at 263. Here, Defendant is already before the Court litigating claims that overlap substantially, if not entirely, with the New York claims. Requiring Defendant to defend those claims in this forum imposes no meaningful additional burden and promotes efficiency by avoiding duplicative proceedings in two

states. *See Lentz v. Sanderson Farms, Inc.*, 2020 WL 12656231, at *5 (N.D. Cal. Feb. 10, 2020) (exercising pendent jurisdiction to "promote[] 'judicial economy, avoid piecemeal litigation, and ensure convenience of the parties'") (quoting *Action Embroidery Corp*, 368 F.3d at 1180)).

Accordingly, Plaintiffs respectfully request that the Court exercise jurisdiction over Ms. Ambroisno's claims. In the alternative, should the Court decline to exercise such jurisdiction, Plaintiffs request dismissal without prejudice so that Ms. Ambroisno may refile her claims in New York or Washington (where Defendant is incorporated).

### D.    Plaintiffs State a Claim for Breach of Express Warranty

Statements on a product's label are part of the bargain between buyer and seller and create an express warranty. *See Sandoval v. Pharmacare US, Inc.*, 730 F. App'x 417, 419 (9th Cir. 2018). "This Court and others in the Ninth Circuit have previously found that plaintiffs have stated common law breach of express warranty claims based on allegedly misleading food labeling." *Moore v. EO Prod., LLC*, 2023 WL 6391480, at *8 (N.D. Cal. Sept. 29, 2023) (collecting cases). Plaintiffs point to an express statement printed on the front of the Product label.

Defendant contends that Plaintiffs have not specified the law under which the breach arises. MTD at 16–17. Plaintiffs allege a breach of express warranty on behalf of a nationwide and California class (¶ 114) and detail each element of the claim (¶¶ 115–121), providing Defendant sufficient notice of the claims. Moreover, Defendant has not demonstrated that the laws governing breach of express warranty vary substantially across states. *See McKinney v. Corsair Gaming*, Inc., 2022 WL 2820097, at *5 (N.D. Cal. July 19, 2022) ("[Defendant] has made no such showing that the law for negligent misrepresentation and breach of express warranty varies widely between the states, and in the absence of other authority, the Court declines to dismiss these claims."). Accordingly, Plaintiffs' breach of express warranty claim should be upheld.

### E.    The Nationwide Class Claim Should be Analyzed at Class Certification

Defendant argues that a nationwide class cannot be certified and asks the Court to strike such claims. "Rule 12(f) motions to strike are not the proper vehicle for seeking dismissal of class allegations." *Vizcarra*, 710 F. Supp. 3d at 732 (Wise, J.) (quoting *Tasion Commc'ns, Inc. v. Ubiquiti*

*Networks, Inc.*, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014)).

Defendant asks the Court to undertake an intensive inquiry into whether express warranty common laws are materially different at this early stage. The Court, however, should "not endeavor to untangle the potentially complicated choice of law questions at this early stage." *Vizcarra*, 710 F. Supp. 3d at 733 (citing *Urban v. Tesla*, 698 F.Supp.3d 1124, 1132–34, (N.D. Cal. Oct. 13, 2023)). The Court should revisit this inquiry at class certification. *Santos v. CarMax Bus. Servs., LLC*, 2018 WL 7916823, at *6 (N.D. Cal. May 8, 2018) ("[A] determination that none of Santos' claims can succeed as a nationwide class is premature."); *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016) ("This Court has consistently declined to apply *Mazza* at the motion to dismiss stage to strike nationwide class allegations."). Further, "Defendant's briefing does not include a choice of law analysis, and there is no evidence in the record that the conflict between California's law and foreign law 'is so severe as to preclude applying California law to [Plaintiff's nationwide] class claims.'" *Id.* at *4 (quoting *Brazil v. Dole Foods Co., Inc.*, 2013 WL 5312418, *16 (N.D. Cal. Sept. 23, 2013)).

Defendant also argues that Plaintiffs do not have standing to bring class claims on behalf of a nationwide class so those claims should be dismissed based on a lack of subject-matter jurisdiction. However, "a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghiradelli Chocolate Co.*, 912 F.Supp.2d 861, 869 (N.D. Cal. 2012). Here, the Products are near identical, ¶ 2, and Plaintiffs have standing.

### F.    Defendant's Attempt to Strike or Dismiss Punitive Damages Should Be Denied

Defendant's request to dismiss or strike punitive damages is misplaced, as the Complaint does not reference punitive damages. Plaintiffs reserve the right to seek such relief at the appropriate stage of this litigation. *See Muldoon v. DePuy Orthopaedics, Inc.*, 2024 WL 3522204, at *15 (N.D. Cal. July 23, 2024) (holding "[t]his court declines to dismiss plaintiff's notice of a remedy he will seek at trial at this early motion to dismiss stage.") (citing cases).

Notwithstanding, "[b]ecause punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed.R.Civ.P. 12(b)(6)." *Oppenheimer*, 2013 WL 3149483, at *4 (citing cases and finding Fed. R. Civ. P. 54 "underscores the impropriety of dismissing requests for punitive damages" as "Rule 54(c) states: 'final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'"); *Kirchenberg v. Ainsworth, Pet Nutrition, Inc*., 2022 WL 172315, at *6 (E.D. Cal. Jan. 19, 2022) (A "motion to dismiss is [not] the appropriate vehicle to challenge the sufficiency of a prayer for punitive damages."); *Meintser v. T-Mobile USA, Inc.*, 2024 WL 4289579, at *8 (E.D. Cal. Sept. 25, 2024) (same); *Gunaji v. State Farm General Insurance Company*, 2024 WL 3468838, at *2, fn. 2 (C.D. Cal. June 4, 2024) ("punitive damages are a remedy" and "provide no basis for dismissal").

## VII.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss and strike should be denied. If the Court dismisses or strikes any portion of the Complaint, Plaintiffs respectfully request leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Stardock Sys., Inc. v. Reiche*, 2019 WL 8333514, at *4 (N.D. Cal. May 14, 2019) ("Upon dismissal of a claim or complaint, leave to amend should be 'freely given.'") (quoting Fed. R. Civ. P. 15(a)(2)).

Dated: September 12, 2025

CROSNER LEGAL, P.C.

By:      */s/ Craig W. Straub*

CRAIG W. STRAUB

Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

*Attorneys for Plaintiffs*