JACOB M. HARPER (State Bar No. 259463)
  jharper@dwt.com
HEATHER F. CANNER (State Bar No. 292837)
  heathercanner@dwt.com
DANIEL H. LEIGH (State Bar No. 310673)
  danielleigh@dwt.com
BRANDON M. STOFFERS (State Bar No. 334895)
  brandonstoffers@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:    (213) 633-6800
Facsimile:    (213) 633-6899

*Attorneys for Defendant*
*Continental Mills, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CARLIE LYSKOSKI, KENDALL HILL, MICHELE TUCKER, and TAYLOR AMBROISNO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CONTINENTAL MILLS, INC.,<br><br>Defendant. | Case No. 5:25-cv-06291-NW<br><br>**DEFENDANT CONTINENTAL MILLS, INC.'S NOTICE OF PENDENCY OF OTHER ACTION OR PROCEEDING, L.R. 3-13**<br><br>Assigned to the Hon. Noël Wise |

DAVIS WRIGHT TREMAINE LLP
350 S. GRAND AVE., SUITE 2700
LOS ANGELES, CALIFORNIA 90071-3487
(213) 633-6800
Fax: (213) 633-6899

Pursuant to Civil Local Rule 3-13, defendant Continental Mills, Inc. (Continental Mills) submits this Notice of Pendency of Other Action or Proceeding to give notice of the pending action *Markowitz v. Continental Mills, Inc.*, Index No. 810679/2025 (N.Y. Sup. Ct., Erie Cty.) (*Markowitz*).

A copy of the complaint in the *Markowitz* action is attached to this notice as **Exhibit A**. *Markowitz* is a putative New York class action that overlaps with this action.  Both *Markowitz* and this action allege that Continental Mills's Cinnamon Swirl Crumb Cake & Muffin Mix was deceptively labeled as having "No Artificial . . . Preservatives" when the Muffin Mix contains silicon dioxide.  *See*, *e.g.*, Ex. A ¶ 21.  Moreover, the *Markowitz* action proposes a putative New York class comprised of "[o]nly citizens of New York, who purchased the Product, for personal consumption and/or use, in New York, during the statutes of limitations" and brings claims under New York General Business Law §§ 349 and 350, *id*. ¶¶ 77, 78,  which overlap with the putative New York class and New York claims in this action.

Continental Mills has not yet answered or otherwise responded to the *Markowitz* complaint.  Continental Mills's response to the *Markowitz* complaint is due October 7, 2025. Continental Mills does not request that the Court take any action to coordinate this case and *Markowitz*.  Continental Mills may seek to stay *Markowitz* while this action is pending.


Dated:  September 15, 2025              DAVIS WRIGHT TREMAINE LLP
                                        By: /s/ *Jacob M. Harper*
                                           Jacob M. Harper

                                        *Attorneys for Defendant*
                                        *Continental Mills, Inc.*

DEFENDANT'S NOTICE OF PENDENCY OF
OTHER ACTION OR PROCEEDING
No. 5:25-cv-06291-NW

# EXHIBIT A

# NEW YORK SUPREME COURT
# ERIE COUNTY

| | |
|---|---|
| GIDEON MARKOWITZ, individually and on behalf of all others similarly situated, | Index No. |
| Plaintiff, | |
| - against - | Class Action Complaint |
| CONTINENTAL MILLS INC., | Jury Trial Demanded |
| Defendant. | |

Gideon Markowitz ("Plaintiff"), through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    As factories replaced farms in the late nineteenth century, the population of the United States shifted towards urban centers.

2.    The inability to garden, hunt, and/or harvest left them at the mercy of the distant manufacturer and canner.

3.    In place of the "pure foods" previously produced on a small scale, Americans were forced to accept unsanitary and dangerous foods, chronicled most notably in Upton Sinclair's 1905 serial "The Jungle: A Story of Chicago."

4.    The corollary to production of such low quality foods, whether based on vegetables, meats, grains, or confections, was the need for specialized substances,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 2    Case 5:25-cv-06291-NW    Document 16    Filed 09/15/25    Page 5 of 24    RECEIVED NYSCEF: 06/23/2025

known as "additives."

5.      This term encompasses non-food substances, created in laboratories, to fulfill various, non-mutually exclusive functions, such as facilitating processing ("processing aids"), improving appearance ("coal tar dyes," rebranded as "colorants"), increasing bulk ("fillers" and "thickeners"), creating or enhancing taste ("flavorings"), facilitating the suspension of one liquid in another ("emulsifiers"), and extending shelf-life, concealing inferiority, and slowing deterioration ("preservatives").

6.      The most potent of these were the preservatives.

7.      Once limited to sugar, salt, vinegar, and spices, the packers and canners devised more potent substances.

8.      They employed industrial chemists, who developed novel Frankenstein-like chemicals, with names like borax, salicylic acid, and formaldehyde.

9.      These went beyond keeping food fresh a few days longer, by disguising unsanitary production practices, preventing foodborne illness from spoiled raw materials, concealing inferior quality, and/or maintaining minimal quality, for significantly longer.

10.      Public opposition to these chemicals is just as strong today.

11.      This is confirmed by research from Nielsen and Mintel, indicating that almost ninety percent of Americans are willing to pay more for healthier foods,

2

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

understood as those without synthetic preservatives.

12.    Other research indicates that almost all consumers rate chemicals in food among their top concerns, higher than foodborne illness.

13.    Since "It's nearly impossible to keep up with which ingredients are safe to eat and which ones cause some kind of harm," public health advocates encourage sound nutritional, health, and/or lifestyle choices, by relying on heuristics, and "extrinsic cues,"[1] seeking foods which promote the absence of synthetic preservatives.

14.    This "rule of thumb" serves two purposes.

15.    First, it recognizes the potential harms and/or adverse effects of such ingredients.

16.    This is based on the widespread belief, media reports, and/or studies, that synthesized chemicals of any kind are not necessarily safe, and/or may pose health

---

[1] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); Gupta K, O. et al., Package Downsizing: Is it Ethical? 21 AI & Society 239-250 (2007).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons," readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

risks.[2][3]

17.    The International Food Information Council ("IFIC") found that almost thirty percent of the public consider these compounds a top concern.[4]

18.    In fact, "research has shown [that additives like synthetic preservatives] are either bad for people to consume or inconclusively so."[5]



19.    Second, since artificial preservatives are often a "marker" for ultra processed foods ("UPF"), a main contributor to diet-related illnesses, such as diabetes, their avoidance is consistent with promoting positive dietary patterns.

---

[2] Cary Funk et al., Public Perspectives on Food Risks, Pew Research Center, Nov. 19, 2018.

[3] Bhavana Kunkalikar, Processed Danger: Industrial Food Additives and the Health Risks to Children, News-Medical.net, May 23, 2023 (citing recent study in the Journal of the Academy of Nutrition and Dietetics).

[4] Tom Neltner, Environmental Defense Fund, Chemicals Policy Director, Chemicals in Food Continue to be a Top Food Safety Concern Among Consumers, Food Navigator, Sept. 20, 2021.

[5] Frank Giustra, You Might Be Surprised by What's in Your Food, Modern Farmer, Feb. 8, 2021.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

20.  To appeal to purchasers who try and avoid foods with non-natural ingredients, which function, or can function, to prevent, among other things, deterioration, Continental Mills Inc. ("Defendant") manufactures, labels, markets, packages, designs, distributes, and/or sells, boxes of Cinnamon Swirl Crumb Cake & Muffin Mix, promising "No Artificial Flavors • Colors • [and] Preservatives," under the Krusteaz brand ("Product").



This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

NYSCEF DOC. NO. 2     Case 5:25-cv-06291-NW    Document 16    Filed 09/15/25    Page 9 of 24    INDEX NO. UNASSIGNED
                                                                              RECEIVED NYSCEF: 06/23/2025

21.  The Product is "misbranded,"[6] because despite the promise of "No Artificial [] Preservatives," the ingredient list,[7] in fine print on the side, reveals, among other components, "Silicon Dioxide," a non-natural, synthetic ingredient, which, tends to, does, and/or can, function as a preservative in this food. AGM § 201(1).[8]

---

[6] "Misbranded" is the statutory term for labeling that is false and/or misleading. "Adulterated" is the statutory term meaning to "render (something) poorer in quality by adding another substance, typically an inferior one."

[7] **INGREDIENTS:** CAKE MIX: Enriched bleached flour (wheat flour, niacin, reduced iron, thiamin mononitrate, riboflavin, folic acid), sugar, food starch-modified, soybean oil, leavening (baking soda, monocalcium phosphate, sodium aluminum sulfate), dextrose, salt, tapioca starch, arabic gum, xanthan gum, natural flavor. CINNAMON TOPPING: Sugar, palm and soybean oil, brown sugar, cinnamon, molasses powder, salt, silicon dioxide (anticaking agent), natural flavor.

[8] Article 16, Weights and Measures, AGM § 176 *et seq*., Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 *et seq*.; Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), 1 N.Y.C.R.R. Part 221 ("Commodities"); Title 1, Department of Agriculture and Markets, Chapter VI, Food Control, Subchapter C, Food and Food Products (Article 17, AGM), including 1 N.Y.C.R.R. § 250.1, 1 N.Y.C.R.R. § 259.1(a).

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.



22. Silicon dioxide, or SiO2, is based on rocks and sand, two natural elements.

23. However, the silicon dioxide used in the Product is not "natural," but synthetic, made through thermal chemical reactions.

24. First, silicon halides or organosilicon halides are evaporated and mixed with a carrier gas.

25. Next, the gas mixture is heated above the boiling point of the silicon halide, but below its ignition temperature.

26. This heated mixture is combined, and/or reacted with, gaseous hydrogen.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.



a: Evaporator     d: Cooling line     g: Silo
b: Mixing chamber    e: Precipitation
c: Burner          f: Deacidification

27. The reaction results in the formation of a silicon dioxide layer on a silicon surface.

28. These steps occur in large factories, mainly in China.



29. The final step involves cooling of the hot exhaust gases and the solid silicon dioxide particles.

8

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

30. Then, exhaust gases, and any halide residues, are separated from silicon

dioxide, which is milled into a fine, crystalline like powder.



31. Silicone dioxide is identified as an "anticaking agent," as part of the

cinnamon topping.

32. The cinnamon topping has high sugar and fat content, with sugar and

palm oil as its main ingredients.

33. This is consistent with the use of powdered fat compositions in prepared

cake mixes, described in patent applications as powdered free flowing fat

compositions.

9

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

9 of 22

34. These particles become physical surface obstacles in the cinnamon topping, increasing the distance and reducing friction between particles.



i. <u>Desiccant</u>

35. Silicon dioxide prevents clumping in part, because it competes with the host powder for existing moisture in the environment.

36. Its porous structure enables it to absorb substantial amounts of free moisture, and/or water vapor.[9]

37. Silicon dioxide is also known to coat particles, and make them more

---

[9] Food Powders Properties and Characterization.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

water-repellant.

38.   Silicon dioxide's is especially important in the cinnamon topping, which has a significant amount of sugar.

39.   Sugar's hygroscopic properties cause it to readily absorb moisture.

40.   This increases vulnerability to shelf-life problems and potential bacterial growth.

41.   Controlling moisture levels is critical not just to maintaining the quality of the cinnamon topping, with respect to taste, aroma, and/or appearance, but for preventing issues like clumping, caking, and/or even microbial contamination.

ii.   Preservative Effects of Anticaking Function

42.   According to an article in India Business and Trade, anticaking agents like silicon dioxide are "crucial for food preservation, extending shelf life, and maintaining nutritional value."[10]

43.   Using such additives allows "powdered foods [to] stay fresh for so long," despite humidity, damp storage conditions, or extended periods on store shelves.

44.   Though "Often overlooked, these additives are essential for preserving" powdered foods.

45.   Their use in powdered foods ensure the cinnamon topping granules can

---

[10]   Anti-caking agents: Keeping packaged foods clump free Aashima Sharma | August 24, 2024

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

be fully utilized and/or distributed when added to the cake mix, and/or maintain its consistent texture.

46.   Silicon dioxide helps extend shelf life by preventing moisture buildup and clumping, thus inhibiting microbial growth and spoilage.

47.   This is because it absorbs free water, which can be a source of bacteria, microorganisms, and/or other pathogens of concern.

48.   The result is that the cinnamon topping will be microbiologically stable for a longer period than it would otherwise be.

49.   By maintaining the cinnamon topping's texture, quality, and/or appearance, it can last longer, i.e., purchasers will not discard it after a shorter period.

50.   it indirectly contributes to food preservation by maintaining product quality and extending its usable life.

51.   For these, and/or other reasons, leading Chinese supplier, JK Silica, described how "food grade silicon dioxide…can improve product quality and shelf life…as a moisture absorbent and anti-caking agent."

52.   The above-identified functions indicate how silicon dioxide (i) prevents and/or limits moisture, extending shelf life, (ii) reduces clumping, which maintains a food's texture, appearance, and/or nutritional value, and/or (iii) prevents spoilage from yeasts, molds, and/or bacteria, by eliminating free moisture.

53.   This is because silicone dioxide is a "chemical[] that, when added to [the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Product, and/or its components], tends to prevent or retard deterioration." 1 N.Y.C.R.R. § 259.1(a).

54.     As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately $4.39.

55.     This price is higher than the Product would be sold for, if it were represented in a non-misleading way.

56.     This will, and/or can be, determined through methods including conjoint analysis, choice analysis, choice-based ranking, hedonic pricing, and/or other similar methods, which evaluate a product's attributes, and/or features.

57.     By determining the willingness to pay of consumers for products, including the Product at issue, with and/or without the challenged claims, the value of the challenged claims can be reduced to a monetary value.

## JURISDICTION

58.     Plaintiff Markowitz is a citizen of New York.

59.     Plaintiff Markowitz is a resident of Erie County, New York.

60.     The Court has jurisdiction over Defendant, because it transacts business within New York, and sells the Product to consumers within New York, through stores, in this State, to citizens of this State.

## VENUE

61.     Venue is in this Court, because Plaintiff Markowitz's residence is in Erie

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

County.

## PARTIES

62. Plaintiff Markowitz is a consumer, not a merchant or re-seller.

63. Plaintiff Markowitz is a citizen of New York.

64. Plaintiff Markowitz is a resident of Erie County, New York.

65. Defendant Continental Mills Inc. is a Washington corporation, with a principal place of business in Washington.

66. Plaintiff is like most, or many consumers, and looks to labeling and/or packaging of foods, to see what he is buying, and/or to learn basic information about them.

67. Plaintiff is like most, or many consumers, and is accustomed to labeling and packaging telling him about a food's significant characteristics, attributes, nutrition, quantity, qualities, ingredients, and/or features.

68. Plaintiff is like most, or many consumers, who try, where possible, to avoid foods with chemical, non-natural, and/or less natural ingredients, which serve, or could serve, preservative functions, believing them to be potentially harmful, not or less natural, less healthy, and/or indicative of lesser quality foods.

69. Plaintiff read, was exposed to, relied on, and/or was caused to pay more money as a result of, "No Artificial [] Preservatives," to believe the Product did not contain artificial, synthetic ingredients, which served, or could serve, preservative

14

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

functions.

70.    Plaintiff bought the Product, with the labeling and packaging identified here, at or around the above-referenced price.

71.    Plaintiff purchased the Product, between July 2022 and May 2025, at stores, in New York.

72.    Plaintiff paid more for the Product than he would have, had he known it contained artificial and/or synthetic ingredients, which served, or could serve, preservative functions, as he would have paid less.

73.    The Product was not "worthless" to Plaintiff, but worth less, than what Plaintiff paid, and he would not have paid as much, absent Defendant's false and misleading statements, and/or omissions.

74.    Plaintiff obtained value from the Product, because it tasted good, but seeks the cost difference between the Product, as presented, and as delivered.

75.    The Product's features and/or attributes, when taken together, and/or utilized for the purpose of conjoint analysis, choice analysis, choice-based ranking, hedonic pricing, or other similar methods, impacted Plaintiff's purchasing choice, compared to similar products lacking its features and/or attributes.

## CLASS ALLEGATIONS

76.    Plaintiff is a consumer, not a re-seller or merchant.

77.    Plaintiff seeks to represent other consumers, in the class identified

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

below, against a big business:

> Only citizens of New York, who purchased the Product, for personal consumption and/or use, in New York, during the statutes of limitations.

78. Plaintiff's claims are based upon New York's General Business Law ("GBL") §§ 349 and 350, passed by the legislature, to protect the New York public, and unsophisticated New York consumers, against large and sophisticated businesses.

79. Excluded from the Class are (i) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family, (ii) governmental entities, (iii) the Court, the Court's immediate family, and Court staff, (iv) any person that timely and properly excludes himself or herself from the Class, (v) non-citizens of New York, (vi) persons who bought the Product outside New York, (vii) persons who used or consumed the Product outside New York, (viii) persons who may be citizens of more than one state, and (ix) any persons who would otherwise be eligible to be a part of the Class, but seek to pursue statutory penalties, as opposed to actual damages.

80. Common questions of issues, law, and fact predominate, and include whether Defendant's representations were, and are misleading, and if Plaintiff and class members are entitled to damages.

81. Plaintiff's claims and basis for relief are typical to other members,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

because all were subjected to the same unfair, misleading, and/or deceptive representations, omissions, and/or actions.

82.  Plaintiff is an adequate representative, because his interests do not conflict with other members.

83.  No individual inquiry is necessary, since the focus is only on Defendant's practices, and the class is definable and ascertainable.

84.  Individual actions would risk inconsistent results, be repetitive, and/or are impractical to justify, as the claims are modest, relative to the scope of the harm.

85.  The class is sufficiently numerous, because the Product has been sold throughout the State for several years, with the representations, omissions, packaging, and/or labeling identified here, from stores in this State, to citizens of this State.

86.  Plaintiff does not seek any penalty as a measure of damages.

87.  To the extent required, Plaintiff waives recovery of any penalty as a measure of damages, and in the event persons wish to seek such penalties, they may opt-out of the proposed class.

88.  Plaintiff's Counsel is competent and experienced in consumer class action litigation, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

17

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

## COUNT I
### New York General Business Law ("GBL") §§ 349 and 350

89. To the extent required, this section incorporates by reference other paragraphs, as necessary.

90. The purpose of the GBL is to protect New York consumers against unfair and deceptive practices.

91. The GBL considers false advertising, unfair acts, and deceptive practices, in the sale of consumer goods, to be unlawful.

92. Violations of the GBL can be based on (1) other laws and standards related to consumer deception, (2) public policy, established through statutes, laws, or regulations, (3) principles of other jurisdictions, (4) decisions with respect to those principles, (5) any rules promulgated pursuant to acts designed to prevent deception, and/or (6) standards of unfairness and deception set forth and interpreted by other agencies, entities, tribunals, and bodies.

93. Defendant's false and deceptive representations and omissions, with respect to the Product's contents, origins, nutrient values, servings, ingredients, flavoring, taste, type, functionality, amount, quantity, and/or quality, were material in that they were likely to influence consumer purchasing decisions.

94. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial [] Preservatives," caused purchasers to expect it did not contain non-

18

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

natural, and/or synthetic ingredients, which performed, or could perform, preservative functions, which was unfair and deceptive to consumers.

95.   The packaging and labeling of the Product violated laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against the public.

96.   The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial [] Preservatives," caused purchasers to expect it did not contain non-natural, and/or synthetic ingredients, which served, or could serve, preservative functions, contrary to statutes and/or regulations, which prohibit consumer deception by companies in the labeling of food products.

97.   Plaintiff paid more for the Product, and/or would not have paid as much, if he knew that it contained non-natural, artificial, and/or synthetic ingredients, which served, or could serve, preservative functions.

98.   Plaintiff seeks to recover for economic injury and/or loss he sustained, based on the misleading labeling and/or packaging of the Product, a deceptive practice under the GBL.

99.   Plaintiff may produce evidence showing how he and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, and/or labeling, using statistical and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

economic analyses, hedonic regression, hedonic pricing, conjoint analysis, choice-based ranking, and/or other advanced methodologies.

100. This means individual damages will be based on the value attributed to the challenged claims, practices, and/or omissions, a percentage of the total price paid, instead of the Product's total price.

101. This is the difference between what they paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for, without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

102. This difference is typically between five ($0.05) and sixty cents ($0.60) per unit, a small fraction or percentage of the total price.

103. As a result of Defendant's misrepresentations and omissions, Plaintiff was injured, and caused to suffer economic or financial damages, by payment of the above-identified price premium for the Product.

104. Plaintiff was caused to pay more than he would have paid for the Product, based on the identified misrepresentations and/or omissions.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff seeks:

1. To declare this a proper class action, certifying Plaintiff as representative, and

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

the undersigned as Counsel for the Class; and

2.  Actual damages, but neither (1) a penalty, nor minimum measure of recovery created or imposed by statute, which may be prohibited, (2) full value damages, nor (3) punitive damages.

June 23, 2025

Respectfully submitted,

/s/  Spencer Sheehan

Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel  (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

Notice of Lead Counsel Designation:

Lead Counsel for Plaintiff

Spencer Sheehan

Sheehan & Associates P.C.

Counsel for Plaintiff

21

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.